559 P.2d 402

**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**Felipe Gardo VALENZUELA,**
**Defendant-Appellant.**

**No. 10674.**

Supreme Court of New Mexico.

Dec. 6, 1976.

Rehearing Denied Dec. 27, 1976.

Pickard & Singleton, Sarah Michael Singleton, Santa Fe, for appellant.

Toney Anaya, Atty. Gen., Raymond Hamilton, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

MONTOYA, Justice.

Felipe Gardo Valenzuela (defendant) was convicted following a jury trial in the District Court of Chaves County of murder in the first degree for the killing of his wife. Judgment and sentence of death were imposed; defendant's motion for a new trial was denied; and this appeal ensued.

The facts pertinent to the appeal are as follows: On March 27, 1975, defendant, an itinerant farm worker, picked up at a discount store in Artesia a revolver on which he had been making payments, and proceeded to his home in search of his wife. Following an argument with his wife, during the court of which defendant was overheard to say in Spanish that he was going to go to the penitentiary for a murder he was about to commit, defendant pulled the gun from his boot where it had been concealed and shot her. The victim died of the gunshot wounds almost immediately thereafter. The evidence also indicated that the marital relationship had become especially turbulent in the days preceding the incident, that defendant's wife had been taking tranquilizers for a nervous condition, and that defendant was of low normal intelligence.

Defendant advances twelve points in support of his arguments for reversal of the jury verdict. They are as follows:

"I. THE JURY SELECTION PROCEDURE AS IT RELATED TO THE DEATH QUALIFICATION OF THE JURY DEPRIVED APPELLANT OF HIS FEDERAL AND STATE CONSTITUTIONAL GUARANTEES TO DUE PROCESS OF LAW AND A FAIR AND IMPARTIAL JURY.

"II. ERRORS IN THE SELECTION OF THE JURY ARRAY AND THE JURY PANEL RESULTED IN AN ARRAY AND PANEL WHICH HAD AN UNDERREPRESENTATION OF SPANISH–SURNAMED PEOPLE AND AN OVERREPRESENTATION OF OLDER PEOPLE, DENYING THE DEFENDANT'S RIGHT TO A CROSS–SECTIONAL REPRESENTATIVE JURY GUARANTEED BY U.S. CONST., AMEND. VI AND XIV, AND N.M. CONST., ART. II, SEC. 14 and 18.

"III. THE METHOD OF SELECTION OF THE JURY VIOLATED N. M.STAT.ANN. § 19–1–3 (SUPP.1975), BECAUSE IT WAS NOT RANDOM AS ENVISIONED BY THE STATUTE.

"IV. FUNDAMENTAL ERROR OCCURRED BECAUSE THERE WAS NO JURY DETERMINATION OF COMPETENCY AND NO VALID WAIVER THEREOF.

"V. THE COURT ERRED IN NOT SUPPRESSING A STATEMENT GIVEN WITHOUT COMPLETE *MIRANDA* WARNINGS.

"VI. THE TRIAL COURT ERRED IN ADMITTING STATE'S EXHIBITS 1, 2, 3, AND 5, PHOTOGRAPHS OF THE DECEASED.

"VII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO ALLOW DEFENSE COUNSEL TO REFER IN CLOSING ARGUMENT TO THE LANGUAGE OF THE INFORMATION.

"VIII. BECAUSE THE INFORMATION IN THIS CASE WAS FILED ON APRIL 10, 1975, THE TRIAL COURT'S DECISION TO GIVE ONLY U.J.L.—CRIMINAL AND TO REFUSE ANY INSTRUCTIONS NOT TAKEN FROM U.J.L.—CRIMINAL VIOLATED THE SUPREME COURT'S ORDER OF JUNE 24, 1975; N.M.CONST., ART. IV, SEC. 34, AND U.S.CONST., ART. I, SEC. 9, AND AMEND. 14.

"IX. IT WAS ERROR TO REFUSE TO INSTRUCT ON THE ISSUE OF INSANITY.

"X. THE TRIAL COURT ERRED IN GIVING, OVER DEFENSE OBJECTION, A COMBINED INSTRUCTION ON THE ISSUES OF INTOXICATION AND DIMINISHED RESPONSIBILITY.

"XI. THE TRIAL COURT ERRED IN FAILING TO QUASH THE INFORMATION BECAUSE N.M.STAT.ANN. § 40A–2–1 (1972) IS UNCONSTITUTIONAL.

"XII. IMPOSITION AND CARRYING OUT OF THE DEATH PENALTY IN THIS CASE, PURSUANT TO N.M. STAT.ANN. § 40A–29–2 (SUPP.1975), CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT AND DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW, IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II §§ 13 AND 18 OF THE NEW MEXICO CONSTITUTION."

The issues raised in point XII regarding the imposition of the death penalty will be discussed first. This point has been answered by us in *State v. Rondeau*, N.M., 553 P.2d 688 (1976). In that case we held that the penalty to be imposed for a first degree felony was life imprisonment under the provisions of § 40A–29–2.2, N. M.S.A.1953 (2d Repl.Vol. 6, 1972), by reason of the recent decisions of the United States Supreme Court regarding capital punishment.

The defendant, in his first three points, contends that the trial court erred on the jury selection procedures relating to the qualification of jurors with respect to imposition of the death penalty, errors in the selection of the jury array, underrepresentation of Spanish-surnamed persons, overrepresentation of older people, and lastly that there was not a random selection of the prospective jurors as required by the statute. The first point relative to the qualification of jurors on the imposition of the death penalty need not be answered. That issue has been rendered moot in view of our decision in *State v. Rondeau*, supra, where the imposition of the death penalty for a first degree felony was struck down. The other issues raised as to jury selection procedures are without merit.

In point IV, defendant argues that fundamental error occurred because there was no jury determination of competency and no valid waiver thereof. A review of the evidence presented at the competency hearing indicates that the defendant was competent to stand trial. No evidence to the contrary was presented and accordingly the trial court correctly found that he was competent to stand trial, since no reasonable doubt could arise from the evidence submitted on this issue. Additionally, no request for jury determination of this issue was made. Defendant's argument that fundamental error resulted is of no merit in view of the state of the record.

Defendant next contends under point V that the court erred in not suppressing a statement given without complete Miranda warnings. The statement in question refers to oral statements made shortly after defendant's arrest and while being transported to the jail in the police vehicle. The argument centers around the question as to whether or not the so-called "spontaneous" statements were voluntarily given. The evidence in the record indicates that the defendant was advised of his rights. The trial court ruled that the statements made by the defendant were spontaneous and the motion to suppress was denied. We do not believe that the trial court erred in refusing to suppress the statements under the circumstances here present.

Another contention raised by defendant in point VI is that the trial court erred in admitting State's exhibits 1, 2, 3 and 5, photographs of the deceased taken at the time of the autopsy by one of the deputy sheriffs. State's exhibits 1, 2 and 3

are Polaroid color photos of the deceased and No. 5 is a picture of the deceased lying on a chair at the scene of the alleged crime. We have held that:

" * * * Photographs which are calculated to arouse the prejudices and passions of the jury and which are not reasonably relevant to the issues of the case ought to be excluded."

State v. Upton, 60 N.M. 205, 209, 290 P.2d 440, 442 (1955). We have also held that photographs are properly admitted if they serve to corroborate other evidence, even though they may be cumulative. In State v. Sedillo, 76 N.M. 273, 277, 414 P.2d 500, 503 (1966), we said:

"The question of admission of photographs into evidence rests largely within the discretion of the trial court, and ordinarily his decision on the question will not be disturbed. State v. Johnson, [57 N.M. 716, 263 P.2d 282 (1953)]; * * *."

The photographs in question here meet the "reasonably relevant" test. We do not agree that Rule 403 of the Rules of Evidence [§ 20-4-403, N.M.S.A.1953 (Supp. 1975)] adopted by this court makes the "reasonably relevant" test obsolete, or that the trial court abused its discretion in admitting the photographs.

The next argument advanced by defendant in point VII. is that the trial court committed reversible error by refusing to allow counsel to refer in closing argument to the language of the information. Defendant claims that in so doing he was foreclosed from impressing upon the jury the nature of the crime of first degree murder by referring specifically to "malice," which definition was not contained in the court's instructions. The instructions given referred to a deliberate intention to take a life (N.M.U.J.I.Crim. 2.00 [2d Repl. Vol. 6, N.M.S.A.1953 (Supp.1975), at 295]), and certainly the ruling of the court did not foreclose or prohibit counsel from using the word "malice" or from arguing the lack of proof of such malice. This argument is without merit.

The next point advanced by defendant is that the filing of the information on April 10, 1975, precluded the use of the Uniform Jury Instructions—Criminal, supra, adopted by this court. U.J.I.Criminal were by terms of this court's order to be used in criminal cases filed in the district court after September 1, 1975. We find nothing in the order that precludes the use of such instructions prior to that date. The purpose of the order is to make their use mandatory in all cases filed after September 1, 1975. We agree that defendant's argument would be well taken if it could be shown that the adoption of N.M. U.J.I.Crim. changed the law. If the instructions requested by the defendant correctly stated the law, but were already covered by the court's own instructions, it was not error to refuse the tendered instructions. Neither can we say that it was error for the trial court to use N.M.U.J.I. Crim. before the effective date for their use, if the instructions used fairly and correctly stated the applicable law for the jury to follow in arriving at its verdict. Defendant's arguments do not convince us that the jury was not properly and correctly instructed.

Defendant in point X contends that the trial court erred in giving a combined instruction on the issues of intoxication and diminished responsibility. The defendant's objections to this instruction, as shown by the record, were directed solely to the impropriety of the use of N.M.U. J.I.Crim. Defendant made no objection at trial to the combination of the issues of intoxication and diminished responsibility and did not contend that either instruction was unsupported by the evidence. The trial court was not alerted to the now-claimed vice of the instruction, nor was the court's attention called to the use of the phrase "and/or." We are mindful of our previous disapproval of the use of such a phrase, which we have previously characterized as a "linguistic abomination." State v. Smith, 51 N.M. 328, 331, 184 P.2d

301, 303 (1947). However, defendant here failed timely to object to the instruction on the grounds now urged and therefore waived the error. Since the claimed error was not properly preserved, or even called to the court's attention, no further discussion is necessary.

In point XI defendant claims "the trial court erred in failing to quash the information because N.M.Stat.Ann. § 40A–2–1 (1972) is unconstitutional." His main attack is predicated on the argument that the statute makes impossible an ascertainable distinction between first and second degree murder, citing *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346 (1972). We disagree with such an argument. The statute and our decisions clearly indicate that the element of deliberation is what distinguishes first degree murder from second degree murder under the information filed in this case. The trial court correctly instructed the jury on what constitutes a deliberate killing. The distinction between first and second degree murder has been clearly enunciated by the decisions of this court in interpreting §§ 40A–2–1 and 40A–2–2, N.M. S.A.1953 (2d Repl.Vol. 6, 1972). See *State v. Vigil*, 87 N.M. 345, 533 P.2d 578 (1975); *State v. Smith*, 26 N.M. 482, 194 P. 869 (1921). Therefore, we hold that the constitutional challenge made under this point is without merit.

The foregoing disposes of all the points raised by the defendant except the issue raised under point IX. Under this point it is claimed that it was error to refuse to instruct on the issue of insanity.

Defendant admits that no one of the expert witnesses testified in a way that would have established insanity as defined in *State v. White*, 58 N.M. 324, 270 P.2d 727 (1954). Defendant asserts, however, that the testimony, if considered cumulatively, could at least have raised sufficient question on the issue to warrant a jury instruction on insanity. He concludes that the trial court, by refusing to instruct the jury on the law of insanity as it operates as a defense to a charge of criminal intent, deprived defendant of his constitutional rights to due process, proof of guilt beyond a reasonable doubt, and to a meaningful defense.

Defendant correctly states that the rule of law governing the disposition of this issue is embodied in *State v. Roy*, 40 N.M. 397, 404, 60 P.2d 646, 650 (1936), where this court declared:

"When the defendant has put in evidence reasonably tending to show him insane, the problem is then to determine whether it is sufficient to take the case to the jury. This is a question for the court to determine. Therefore, when all the evidence is in, if there has been adduced competent evidence reasonably tending to support the fact of insanity urged by the defendant as a defensive issue in the case, it is the duty of the court to instruct on question of insanity. Otherwise, the court may properly refuse such instruction. [Citations omitted.]"

Obviously, proper application of this rule depends in turn upon the proper determination of what kind and quantum of evidence will "reasonably [tend] to support the fact of insanity." This rule is found in the landmark New Mexico case of *State v. White*, supra, where this court stated (58 N.M. at 330, 270 P.2d at 731):

"For the purpose of clarifying the rule of law applicable to the defense of insanity in criminal cases in this jurisdiction, we state it to be as follows: ' "The jury must be satisfied that, at the time of committing the act, the accused, *as a result of disease of the mind * * ** (a) did not know the nature and quality of the act or (b) did not know that it was wrong or (c) was incapable of preventing himself from committing it." ' [Citations omitted.]" (Emphasis added.)

We note that the first condition necessary for the establishment of insanity is a "disease of the mind" (or "mental disease," as N.M.U.J.I.Crim. 41.00 puts it). If this diseased mental state is not

proved, it matters not at all how much evidence is admitted to prove, cumulatively or otherwise, any of the alternative secondary conditions of insanity, e. g. inability to distinguish right from wrong or inability to control one's actions. While it is at least arguably true that the record before the court presents sufficient testimony to prove defendant's incapacity to prevent his commission of the act, if this lack of capacity is not proven to be the result of a disease of the mind, it is completely immaterial to prove insanity.

The element of a disease of the mind is the *sine qua non* of proof of insanity. That is an easy statement of the rule; stating precisely what constitutes such a disease is of course a far more difficult and complex problem, one which has been the subject of much clinical and scholarly debate. For our immediate purpose, however, it is sufficient to note and approve the discussion of the question found ·in *State v. White,* supra (58 N.M. at 330, 270 P.2d at 730) :

"* * * [T]he insanity of which we speak does not comprehend an insanity which occurs at a crisis and dissipates thereafter. The insanity of which we speak is a true disease of the mind, normally extending over a considerable period of time, as distinguished from a sort of momentary insanity arising from the pressure of circumstances."

■ A "momentary insanity arising from the pressure of circumstances" is precisely what defendant and the experts testifying on his behalf were apparently attempting to establish in this case (and all that they would be able to establish in any event). For example, there is considerable expert testimony to the effect that, while defendant was not suffering from a "fixed mental disease" and could not in fact be termed either mentally ill or legally insane, he suffered from a "character disorder that leaves him susceptible to provocation." As this court said in *State v. White,* supra (58 N.M. at 330, 270 P.2d at 730–731) :

"* * *. Whether or not a defendant had the 'normal governing power of the will' is beside the point; the only question for determination is whether *disease* deprived the defendant of whatever will power he happened to have. * * *" (Emphasis added.)

No amount of evidence of a "personality with a low trigger point, a tolerance not as high, and a lack in education and sophistication thereby making him more susceptible to aggravation and provocation" will substitute for the "true disease of the mind" test required by our law as the initial premise in a case of insanity.

As we said in *State v. Roy,* supra (40 N.M. at 404–405, 60 P.2d at 650–651) :

"In the case of *Maulding v. Commonwealth,* 172 Ky. 370, 189 S.W. 251, 255, the defendant complained of the court's refusal to instruct on insanity. * * * The Court of Appeals of Kentucky sustained the trial court's refusal to instruct, and cited with approval from an earlier Kentucky case, which statement of the law we deem sound and applicable here: 'There is no law which will excuse or palliate a deliberate murder on the ground that the perpetrator of it is unlearned, passionate, ignorant, or even of weak mind, unless the weakness of mind amounts to such a defect of **reason** as to render him incapable of knowing the nature and quality of his act, or, if he does know it, that he does not know it is wrong to commit it. *It is no excuse for murder that the perpetrator has not power to control his actions when aroused or in a passion.* It is the duty of men who are not insane or idiotic to control their evil passions and violent tempers or brutal instincts, and if they do not do so, it is their own fault, and their moral and legal responsibility will not be destroyed or avoided by the existence of such passions, or by their conduct resulting from them.' *Bast v. Commonwealth,* 124 Ky. 747, 99 S.W. 978, 30 Ky.Law Rep. 967.

"In the instant case, the defendant having failed to produce evidence rea-

sonably tending to establish the fact of insanity, he was not entitled to have the law on the subject declared by the court or to have the issue of insanity submitted to the jury." (Emphasis added.)

The circumstantial nature of defendant's alleged loss of control at the moment of killing his wife is further evidenced by the following exchange between Judge Snead and Dr. John McCarthy, a psychiatrist who testified for the defense at trial:

"THE COURT: All right. Would it be a fair characterization—and, again, if it is not a fair one, please speak, and if I am unfairly questioning, Mr. Campos, please speak. That, it is your view that his ability to reason to resist his emotional impulses, to formulate an intelligent plan or course of action, would be diminished by reason of intoxication, fatigue and the stress of his formidable relationship.

"THE WITNESS: Yes, sir.

"THE COURT: And, your conclusion, as I view it, from the history given, and again check me if I am improperly characterizing the matter, that it was an event which, as you view it, occurred under circumstances arousing a—under circumstances of provocation, such as to carry away his ability to coolly consider the consequences of his actions.

"THE WITNESS: Correct."

■ It is interesting to note that defendant's inability to control his actions was thus explained to be the result of "intoxication, fatigue, and stress." While these may well be facts tending to show (and thereby warranting instructions on) provocation and/or diminished responsibility, nevertheless, under the rubric of *State v. Roy,* supra, and *State v. White,* supra, such factors neither tend to prove nor warrant instructions on insanity since such temporary pressures of circumstance operative upon an "unlearned, passionate, ignorant" man of "weak mind" have specifically been held *not* to constitute the requisite defect of reason necessary to prove a dis-

eased mind and, thereby, insanity. See *State v. Roy,* supra, quoting *Mauldin v. Commonwealth,* 172 Ky. 370, 189 S.W. 251 (1916).

Furthermore, the trial court did not just unilaterally refuse the defendant's tendered instruction. The record is replete with examples of the court's careful questioning of the experts and thoughtful consideration of the nature of the testimony. There is nothing in the record, nor does defendant allege anything, to indicate that the judge's refusal to instruct the jury on insanity was arbitrary or an abuse of discretion or unsupported by substantial evidence.

■ The problem of determining whether there is sufficient evidence of insanity to permit the jury to consider it as a factual question is, in the first instance, a question of law for the court. *State v. Roy,* supra; *State v. Gardner,* 85 N.M. 104, 509 P.2d 871 (1973), cert. denied, 414 U.S. 851, 94 S.Ct. 145, 38 L.Ed.2d 100 (1973). Since the record in this case is barren of any proof that a disease of the mind produced defendant's "rage reaction" at the time of the commission of the murder, the trial court properly decided that the evidence did not warrant the submission of the insanity issue to the jury.

In view of all of the foregoing, the verdict of the trial jury finding the defendant guilty of first degree murder is affirmed. However, in view of the disposition which we have made of point XII, which raised the issue of the death penalty imposed by the district court, the cause must be remanded for the imposition of a proper sentence. In accordance with the determination we made in *State v. Rondeau,* supra, we reverse only the judgment and sentence of the court imposing the death penalty. The cause is, therefore, remanded to the District Court of Chaves County for the purpose of sentencing the defendant to life imprisonment.

IT IS SO ORDERED.

OMAN, C. J. and SOSA, J., concur.