860 P.2d 777

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Aaron PETTIGREW, Defendant–
Appellant.**

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Darrell BANNISTER, Defendant–
Appellant.**

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jason TURNER, Defendant–Appellant.**

**Nos. 14114, 14202 and 14229.**

Court of Appeals of New Mexico.

Aug. 3, 1993.

Certiorari Denied Sept. 22, 1993.

Tom Udall, Atty. Gen., Mary Catherine McCulloch, Daniel F. Haft, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Christopher Bulman, Asst. Appellate Defender, Santa Fe, for defendant-appellant Aaron Pettigrew.

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant Darrell Bannister.

D. Scott Riedel, Santa Fe, for defendant-appellant Jason Turner.

## *OPINION*

PICKARD, Judge.

■ In these consolidated appeals, Defendants Bannister, Pettigrew, and Turner raise issues related to their felony aggravated battery convictions pursuant to NMSA 1978, Section 30–3–5(C) (Repl. Pamp.1984). Defendant Bannister raises the issue of whether the trial court erred in failing to give a jury instruction for simple battery pursuant to NMSA 1978, Section 30–3–4 (Repl.Pamp.1984). Defendants Bannister and Turner raise the issue of whether there is sufficient evidence to sustain their convictions for felony aggravated battery. In addition, all three Defendants raise the following two issues: (1) whether it was an abuse of discretion for the trial court to admit into evidence a life-size color photograph depicting Victim's injuries prior to Victim's having been attended to and cleaned up by the medical staff; and (2) whether the trial court committed reversible error in excusing a seated juror for the appearance of impropriety based on the trial court's interview of the juror. Other issues, raised at earlier stages in the appel-

late proceedings but not argued in the briefs, are deemed abandoned. *See State v. Fish,* 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.), *cert. denied,* 102 N.M. 734, 700 P.2d 197 (1985).

In affirming the decisions of the trial court, we hold that (1) the trial court properly denied giving a simple battery jury instruction for Defendant Bannister because no view of the evidence shows that simple battery was the highest degree of crime committed; (2) substantial evidence supports Defendants Turner's and Bannister's convictions of aggravated battery in a manner that could have caused great bodily harm; (3) the photograph was properly admitted into evidence because it was relevant and more probative than prejudicial; and (4) the trial court did not commit reversible error in its excusal of the juror.

FACTS

The altercation that resulted in the felony aggravated battery convictions of the three Defendants began when Victim approached a group of people who were moving furniture into a mobile home. Victim mistakenly believed that these people were there without the owner's permission and discharged a shotgun into the ground as a warning. Defendants, in confronting Victim, asserted their right to be at the mobile home. One witness testified that Victim pointed his shotgun at Defendants Bannister and Turner, while another witness testified that Victim backed away from Defendants in a non-threatening manner. Then Defendant Bannister took the gun away from Victim. It is not disputed that all three Defendants then were involved in striking Victim.

Defendant Pettigrew admitted to an investigator for the district attorney's office that Pettigrew punched Victim thirty times very rapidly and very hard. Testimony concerning Defendant Bannister ranged from his hitting Victim a few times with his fists or once with the butt of the shotgun to his hitting Victim with his fists and the shotgun and kicking Victim three times in the face. Testimony concerning Defendant Turner showed that he hit Victim after Victim fell down and that he held Vic-

tim by the neck while Defendant Bannister hit Victim. Victim's injuries were comprised of swelling about the eyes, mouth, and face in general, and lacerations of the face, one of which required stitches. The prosecution's expert witness, Dr. Timmons, was very surprised that the beating about the head sustained by Victim did not result in serious injury or death.

JURY INSTRUCTION FOR SIMPLE BATTERY

■ Defendant Bannister claims that the trial court should have instructed the jury on simple battery pursuant to Section 30–3-4. A defendant has the right to instructions on lesser included offenses when there is some evidence tending to establish that the lesser included offense is the highest degree of crime committed. *See Fish,* 102 N.M. at 778–79, 701 P.2d at 377–78; *see also State v. Duran,* 80 N.M. 406, 407, 456 P.2d 880, 881 (Ct.App.1969). Battery is included within the offense of aggravated battery. *Id.; see* §§ 30–3-4 & –5(C). The difference is that battery does not require an intent to injure.

■ Bannister acknowledges that he at the least hit Victim with the butt of a gun or punched him a few times. In light of these admissions, together with the showing that the blows administered by Bannister occurred when Victim was being beaten by the other Defendants, there was no evidence to support a finding that Bannister did not have the intent to injure victim. *See State v. Jaramillo,* 82 N.M. 548, 549–50, 484 P.2d 768, 769–70 (Ct.App.1971) (the defendant's admission that he intended to hit someone on the head with a pistol established nothing less than aggravated battery when pistol was discharged during a fight). Accordingly, the trial court did not err in refusing to instruct on simple battery.

SUFFICIENCY OF THE EVIDENCE

■ Defendants Bannister and Turner both argue that the State failed to establish the essential element for felony aggravated battery that the battery occur "in any manner whereby great bodily harm or death can be inflicted." Section 30–3-5(C). Sec-

tion 30–3–5(C) requires only that great bodily harm could result, not that it must result. Testimony during the trial described a beating in which Victim was hit by the butt of a gun and kicked and punched thirty or forty times by Defendants. Dr. Timmons' expert medical testimony set forth that the beating about the head of Victim could have caused permanent impairment and death. In fact, the doctor was surprised that it did not cause such injury. This evidence is substantial evidence for the charge of felony aggravated battery when viewed, as it must be, in the light most favorable to the verdict. *See State v. Sutphin*, 107 N.M. 126, 130–31, 753 P.2d 1314, 1318–19 (1988).

■ Defendant Bannister also argues that his conviction for felony aggravated battery should be overturned for lack of sufficient evidence that he went beyond justified self-defense. Viewing the evidence in the light most favorable to the verdict, substantial evidence exists through witness testimony that a rational jury could have found that Bannister committed aggravated battery by joining the other two Defendants in hitting and kicking Victim repeatedly without facing resistance after the gun was taken away. *See id.*

### ADMISSIBILITY OF PHOTOGRAPH

■ Defendant Turner asserts that the life-size photograph of Victim that was taken after the battery but before Victim was medically attended to was not relevant. SCRA 1986, 11–401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The photograph is relevant because it depicts the extent of Victim's injuries and because it makes more probable than not the potential of great bodily harm, which is an element of aggravated battery. Also, it illustrates the treating physician's testimony concerning the injuries to Victim. *See State v. Carlton*, 83 N.M. 644, 648, 495 P.2d 1091, 1095 (Ct.App.), *cert. denied*, 83 N.M. 631, 495 P.2d 1078 (1972).

■ All three Defendants argue that the photograph was impermissibly proffered to arouse prejudices and passions in the jury and that the photograph had little probative value compared to the prejudice it aroused. *See* SCRA 1986, 11–403; *State v. Valenzuela*, 90 N.M. 25, 28–29, 559 P.2d 402, 405–06 (1976); *State v. Upton*, 60 N.M. 205, 209–10, 290 P.2d 440, 442 (1955). We give trial courts great discretion in balancing the prejudicial impact of a photograph against its probative value, and we review their decisions under the abuse of discretion standard. *State v. McGhee*, 103 N.M. 100, 104, 703 P.2d 877, 881 (1985); *State v. Webb*, 81 N.M. 508, 510, 469 P.2d 153, 155 (Ct.App.1970). Defendants argue that the photograph actually obscures the true nature of the injuries because the blood and swelling in the photo give the jury a less clear picture of whether the battery occurred in a manner in which great bodily harm could occur. We do not find that argument persuasive. The photograph could have aided the jury in determining whether aggravated battery occurred by illustrating the doctor's testimony and depicting Victim's injuries. " 'Photographs are the pictured expressions of data observed by a witness. They are often more accurate than any description by words, and give a clearer comprehension of the physical facts than can be obtained from the testimony of witnesses.' " *Carlton*, 83 N.M. at 648, 495 P.2d at 1095 (quoting *Potts v. People*, 114 Colo. 253, 158 P.2d 739, 740 (1945)).

In addition, admission has been upheld for far more gruesome and potentially prejudicial and inflammatory photos than the one in the instant case. *See State v. Boeglin*, 105 N.M. 247, 252–53, 731 P.2d 943, 948–49 (1987) (close-up photos of neck wounds); *Valenzuela*, 90 N.M. at 28–29, 559 P.2d at 405–06 (three color autopsy photos and one photo of the murder victim at the crime scene). In fact, we are unaware of any case that has reversed a conviction due to allegedly inflammatory photographs. We hold that the trial court did not abuse its discretion and that it

properly admitted the photograph into evidence for the reasons discussed.

### JUROR EXCUSAL

The district attorney moved to have a juror disqualified because an investigator with the district attorney's office observed the juror leaving in his car with an intern from the public defender's office during a recess in the trial. Upon the suggestion of counsel for Defendant Turner, and with the consent of counsel for Defendants Bannister and Pettigrew, the trial court interviewed the juror outside the presence of Defendants and their attorneys. Prior to the in camera interview, the district attorney suggested that singling out the juror for such an interview might distress the juror. The trial court excused the juror after the interview but prior to informing Defendants of the substance of his communication with the juror or discussing with them his decision to excuse the juror. The reason the trial court gave for excusing the juror was the appearance of impropriety caused by the necessity of singling out the juror for an in camera interview in order to investigate the unauthorized contact. However, the trial judge noted that he did not believe that the juror had actually discussed the case with the intern.

Defendants contend that (1) the trial court's excusal of the seated juror based on the appearance of impropriety was an abuse of discretion, and (2) the trial court committed reversible error by excusing the juror after an ex parte interview with him without allowing meaningful input from Defendants prior to his excusal, thus violating Defendants' constitutional rights to due process and to a fair trial. U.S. Const. amends. VI & XIV; N.M. Const. art. II, §§ 14 & 18.

### 1. *Abuse of Discretion*

Defendants argue that excusing the seated juror because of the appearance of impropriety is an abuse of discretion because it is for a legally insufficient reason absent a determination that the juror's ability to be impartial had been affected by the unauthorized contact with the public defender's intern. *See State v. Wiberg,* 107 N.M. 152,

156–57, 754 P.2d 529, 533–34 (Ct.App.) (it was not abuse of discretion for the trial court to refuse to disqualify a juror who belonged to the organization Mothers Against Drunk Driving absent a showing that the juror was actually biased or partial), *cert. denied,* 107 N.M. 106, 753 P.2d 352 (1988). Furthermore, Defendants argue that excusing the juror for a legally insufficient reason is therefore inherently prejudicial to Defendants. *See United States v. Fajardo,* 787 F.2d 1523, 1525 (11th Cir.1986) (dicta).

■ It is undisputed that the juror had unauthorized contact with an intern from the public defender's office. Any unauthorized contact with a juror is presumptively prejudicial. *Mares v. State,* 83 N.M. 225, 227, 490 P.2d 667, 669 (1971) (citing *State v. Gutierrez,* 78 N.M. 529, 433 P.2d 508 (Ct. App.1967)); *see Prudencio v. Gonzales,* 104 N.M. 788, 789–90, 727 P.2d 553, 554–55 (Ct.App.), *cert. denied,* 104 N.M. 761, 726 P.2d 1391 (1986). The question of whether the presumption of prejudice has been rebutted is entrusted to the sound discretion of the trial court. *Prudencio,* 104 N.M. at 790, 727 P.2d at 555. It is also within the discretion of the trial court to replace seated jurors "who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties" with alternate jurors. SCRA 1986, 5–605(B) (Repl.1992); *see State v. Padilla,* 91 N.M. 451, 453, 575 P.2d 960, 962 (Ct.App.1978). A trial court abuses its discretion if it reaches an erroneous conclusion and judgment that is " 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn from such facts and circumstances.' " *State v. Hargrove,* 81 N.M. 145, 147, 464 P.2d 564, 566 (Ct.App.1970) (quoting Bowers, *Judicial Discretion of Trial Courts* § 12 (1931)).

■ Defendants' reliance on *Wiberg* is not persuasive because although a finding of bias was necessary under the facts of *Wiberg,* a determination that a juror is biased or partial is not the only basis for

excusal. *See* SCRA 5–605(B) & (C); *see also Fajardo*, 787 F.2d at 1525 (not an abuse of discretion to excuse a juror if the facts support a determination that the juror is incapacitated by illness or has a disruptive effect on the other jurors); *United States v. Peters*, 617 F.2d 503, 505 (7th Cir.1980) (no abuse of discretion when a tardy juror was excused because it would have potentially been too disruptive to inquire into the juror's whereabouts).

■ Nor are we persuaded that the appearance of impropriety is necessarily a legally irrelevant consideration. First, impartiality is a core requirement of the right to a fair trial. *See* U.S. Const. amend. VI; N.M. Const. art. II, §§ 14 & 18; *Wiberg*, 107 N.M. at 156–57, 754 P.2d at 533–34. Second, in the context of regulating judicial conduct, judges are required to avoid the appearance of impropriety in their own activities. *See* SCRA 1986, 21–200 & –800 (Repl.1992). The appearance of impropriety in the instant case involved the judge's action as well as the judicial process itself. Third, the appearance of impropriety may be no less important in the context of possible contamination of the jury by outside influences. *See Archuleta v. New Mexico State Police*, 108 N.M. 543, 545, 775 P.2d 745, 747 (Ct.App.), *cert. denied*, 108 N.M. 384, 772 P.2d 1307 (1989). Fourth, it is also possible that the in camera interview and its appearance of impropriety could have potentially had a disruptive effect on the other members of the jury. Accordingly, we do not find an abuse of discretion in the instant case.

■ Moreover, Defendants have failed to show how the alleged abuse has prejudiced them in any way. *See State v. Gilbert*, 100 N.M. 392, 397, 671 P.2d 640, 645 (1983). Alternate jurors and seated jurors are called and impanelled in the same fashion. *See* SCRA 5–605(B); SCRA 1986, 5–606(D)(3) (Repl.1992). The alternate juror who replaced the excused juror was therefore selected and approved by Defendants along with the excused juror. Defendants presented no evidence to show that the alternate juror was biased, partial, or disqualified for any reason. When a seated juror is excused and replaced by an alternate juror prior to deliberations, the verdict is not affected, and a defendant is considered to have been tried by the same jury. *State v. Haar*, 110 N.M. 517, 523–24, 797 P.2d 306, 312–13 (Ct.App.) (double jeopardy did not require that the first twelve jurors seated decide the case, where one seated juror was later excused and replaced by an alternate, since the defendant was tried by the same jury), *cert. denied*, 110 N.M. 330, 795 P.2d 1022 (1990). Furthermore, Defendants have cited no authority to support the proposition that they have a right to a particular juror on the panel. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). In fact, persuasive authority suggests that they do not. *See Haar*, 110 N.M. at 523–24, 797 P.2d at 312–13. Also, in *Anderson v. Dun & Bradstreet, Inc.*, 543 F.2d 732, 734–35 (10th Cir.1976), a juror was excused on the fourth day of trial because she inadvertently had a conversation with one of the defendant's employees. Although the juror brought this to the attention of the trial court herself and claimed it would not affect her ability to remain impartial, the trial court excused her and substituted an alternate. The Tenth Circuit Court held that the defendants had no vested right to a particular juror on the panel. The defendants had accepted the substituted juror when she was seated as an alternate. Accordingly, we hold that Defendants in this case have failed to show that the substitution of an alternate juror interfered with their ability to receive a fair trial or prejudiced them in any way.

### 2. *Ex Parte Communication and Right to Meaningful Input*

It is undisputed that Defendants consented to the ex parte communication between the trial court and juror. Nor is it disputed that counsel for Defendant Turner requested that the trial court meet with the juror outside the presence of Defendants and their attorneys and that the other Defendants and counsel concurred in this request. It is Defendants' contention that although they consented to the initial ex

parte communication, they did so only for the purpose of facilitating the investigation of the unauthorized contact between the juror and the public defender's intern. Defendants assert that such consent did not waive their right to meaningfully participate in the outcome of the fact-gathering interview.

Defendants rely on *State v. Mares,* 112 N.M. 193, 812 P.2d 1341 (Ct.App.), *cert. denied,* 112 N.M. 235, 814 P.2d 103 (1991), and *State v. Wilson,* 109 N.M. 541, 787 P.2d 821 (1990), for the proposition that the trial court was required to provide Defendants with the opportunity to meaningfully participate in the decision to dismiss the juror. *Compare Mares,* 112 N.M. at 197, 812 P.2d at 1345 (the defendant was not prejudiced by the ex parte communication between judge and jurors during voir dire in which the defendant and counsel agreed to the ex parte communication beforehand and were given the opportunity to question the jurors afterwards in open court), *with Wilson,* 109 N.M. at 546, 787 P.2d at 826 (it was error when the trial court on her own initiative communicated with juror, the defendant did not waive the ex parte communication and was offered no opportunity to communicate with the juror, and the trial court failed to place the ex parte communication on the record). Defendants further assert that the trial court's discussion of its excusal of the juror after the excusal had already taken place was therefore merely "an empty gesture." *Tomlinson v. State,* 98 N.M. 213, 215, 647 P.2d 415, 417 (1982) (remand for resentencing was required when trial court sentenced defendant immediately upon receipt of the jury's verdict without giving the defendant an opportunity to speak or conducting a sentencing hearing).

Defendants further assert that because they were not afforded any opportunity to meaningfully participate in the trial court's final decision of whether or not to excuse the juror, they are not required to show that they were prejudiced by the in camera interview itself. *See Haar,* 110 N.M. at 523, 797 P.2d at 312. We disagree.

We recognize that Defendants have the right to be present at all stages of a trial. SCRA 1986, 5–612(A) (Repl.1992). Included in this right is the right to be present when the trial court communicates with the jury. *State v. Brugger,* 84 N.M. 135, 137, 500 P.2d 420, 422 (Ct.App.1972). In the absence of Defendants' waiver of this right, ex parte communication between the trial court and the juror is presumed to be prejudicial to the criminal defendant. *See Hovey v. State,* 104 N.M. 667, 669–70, 726 P.2d 344, 346–47 (1986); *Brugger,* 84 N.M. at 137, 500 P.2d at 422; *Gutierrez,* 78 N.M. at 531, 433 P.2d at 510. However, unlike the facts in *Haar* or *Wilson,* here the contact between the trial court and the juror was with the knowledge and consent of Defendants prior to the ex parte communication. Accordingly, the presumption of prejudice does not apply in the instant case because Defendants specifically encouraged the trial court to meet with the juror outside their presence. As discussed earlier in the opinion, Defendants have failed to demonstrate any prejudice regarding the fairness of the trial, the effect on the verdict, or the qualifications of the alternate juror, and they have failed to show that they had any particular right to a seated juror rather than the substituted alternate juror.

This same lack of demonstrated prejudice answers Defendants' contentions that they were deprived of meaningful input. Even when error is of a constitutional dimension, it does not require reversal if it was harmless beyond a reasonable doubt. *State v. Henry,* 101 N.M. 277, 280, 681 P.2d 62, 65 (Ct.App.1984). As in *Henry,* Defendants here invited the trial court's contact with the juror, and Defendants failed to show prejudice. *See id.* Even if it could be said that the trial court erred in not discussing with Defendants and counsel its decision to excuse the juror between the time the trial court conducted the consented-to interview and the actual excusal of the juror, such error was harmless and does not require reversal absent a showing of prejudice to Defendants. *See Mares,* 112 N.M. at 197, 812 P.2d at 1345; *Haar,* 110 N.M. at 523, 797 P.2d at 312.

We realize that our decision may have the effect, as Defendants argue, of being viewed as tolerating technical noncompliance with rules. Such is usually the case whenever a decision is based on harmless error or whenever an appellant must show prejudice to prevail. Nonetheless, we believe that our disposition of this case is particularly appropriate for several reasons. First, this is not a case in which threatened reversal of a conviction will serve any prophylactic purpose. *See State v. Hennessy*, 114 N.M. 283, 289, 837 P.2d 1366, 1372 (Ct.App.) (rule requiring reversal for prosecutor misconduct in commenting on the defendant's silence), *cert. denied*, 114 N.M. 82, 835 P.2d 80 (1992).

Second, this is not a case involving the sort of structural defect that goes to the heart of the adversarial process and that is not subject to a harmless error analysis. *See State v. Rodriguez*, 114 N.M. 265, 268, 837 P.2d 459, 462 (Ct.App.1992) (exclusion of the defendant from courtroom during crucial testimony or total deprivation of right to counsel may be such defects). Third, this is not even a case in which Defendants can show that, with their input, there may have been a different result. *See Tomlinson*, 98 N.M. at 215, 647 P.2d at 417 (the defendant may have changed the trial court's mind on sentencing at a properly conducted sentencing hearing).

In this case, Defendants' right was to a fair and impartial jury, and Defendants received a fair and impartial jury. Because Defendants cannot point to any way the outcome of this case would have changed, this may not be an inappropriate case in which to recall the maxim that " '[a] defendant is entitled to a fair trial but not a perfect one.' " *State v. Moore*, 94 N.M. 503, 505, 612 P.2d 1314, 1316 (1980) (quoting *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953)).

Finally, there is an additional, independent reason why the excusal of the juror should not result in a reversal of Defendant Bannister's conviction. Defendant Bannister neither objected nor joined in his codefendants' objections to the trial court's actions, although there was ample opportunity for him to have done so. Given that counsel for the codefendants either objected or joined in the other's objection while Defendant Bannister remained silent, we can conclude only that Defendant Bannister was satisfied with the trial court's handling of the matter or that he affirmatively preferred to have his case decided by the alternate juror. We will not second-guess such an obviously tactical matter. *See State v. Garcia*, 95 N.M. 246, 249, 620 P.2d 1271, 1274 (1980) (describing tactics involved in picking jury).

CONCLUSION

For the reasons stated above, we affirm the trial court on all four issues.

IT IS SO ORDERED.

DONNELLY and BIVINS, JJ., concur.