This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                           **NO. 31,773**

**MYRON WILLIAMS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Sri Mullis, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}     Defendant Myron Williams appeals his conviction for aggravated battery against a household member, contrary to NMSA 1978, Section 30-3-16(C) (2008).

**[RP 106]** Pursuant to *State v. Franklin*, 1967-NMSC-151, ¶ 9, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, ¶ 24, 103 N.M. 655, 712 P.2d 1, Defendant raises three issues on appeal: (1) that prosecutorial misconduct deprived him of a fair trial; (2) that the district court erred in admitting photographs of Victim's injuries taken four days after the incident; and (3) that the district court erred in allowing a police officer to testify as an expert regarding whether Victim had been injured in a manner that could cause great bodily harm.- We affirm.

**BACKGROUND**

{2} On December 2, 2010, Victim returned home from school and was upset to find that Defendant, who was her live-in boyfriend, had failed to wash some dirty pots. The couple began to argue. The argument escalated and after it became physical, Victim called 911.

{3} Responding to the call, Officer Timothy Orum arrived at the scene, spoke with both Victim and Defendant, and took photographs of visible injuries on Victim. Officer Orum took Defendant into custody. Defendant was later charged with aggravated battery on a household member and false imprisonment.

{4} At trial, Victim testified that at one point during the altercation, Defendant was on top of her, choking her with one hand and punching her with the other. She stated

2

that when she was able to get up she attempted to exit the residence, but Defendant kicked her in the back, causing her to fall.

{5} Victim also testified that during their argument, she ended up falling down in the bathroom. She tried to leave the bathroom, but Defendant was on top of her, and with her knees to her chest, held her neck in one hand, choking her, and with the other hand, punched her several times "all over." She suffered a black eye, a broken nose, and bruises. When she was able to get up and leave, Defendant kicked her in the back, knocking her down as she walked out the door. Defendant gave conflicting testimony; admitting that he punched Victim in the face, but denying having choked or kicked her.

{6} Two sets of photographs depicting Victim's injuries were admitted into evidence. The first set of photographs included the photographs Officer Orum had taken the night of the incident. The second set were taken four days later at Victim's aunt's house. Photographs taken the night of the incident show that her right eye was bruised and completely swollen shut, and that matter was leaking from her nose. Other photographs show marks on the left side of her neck (where Defendant choked her), bruises behind her right ear (Defendant punched her on the ear), on her back (where Defendant kicked her), and on her arm. Four days later, Victim still had a swollen black eye, and blood in the same right eye. Victim testified it took two to

three weeks for the blood in her eye to clear up. Both sets of photographs corroborated Victim's testimony and all the photographs were admitted into evidence.

**{7}** When Officer Orum testified at trial, he described his interactions with both Victim and Defendant, as well as his investigation of the scene the night of the argument. Officer Orum was not formally tendered, nor was he accepted as an expert witness, but was permitted by the district court (over Defendant's objection) to testify regarding the nature and extent of Victim's injuries, and to give his opinion that Victim was injured in a manner that could have caused great bodily harm.

**{8}** Defendant was convicted of aggravated battery against a household member. This appeal followed.

**DISCUSSION**

**I.    Prosecutorial Misconduct**

**{9}** Defendant argues that prosecutorial misconduct deprived him of a fair trial because the prosecutor: (1) elicited an impermissible reference to Defendant's criminal history from a State's witness; and (2) made improper statements during closing argument. We are unpersuaded.

**A.    Testimony Regarding Defendant's Criminal History**

**{10}** Generally, this Court does not tolerate prosecutors who "insist upon getting before a jury inadmissible . . . facts which they hope will aid them in obtaining a

guilty verdict." *State v. Gutierrez*, 1979-NMCA-016, ¶ 24, 93 N.M. 232, 599 P.2d 385. However, where questions posed by a prosecutor are intended to determine the defendant's demeanor and mental state, rather than to elicit inadmissible testimony, any error caused by the inadvertent testimony is harmless. *State v. Isiah*, 1989-NMSC-063, ¶ 12, 109 N.M. 21, 781 P.2d 293, *overruled on other grounds by State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071.

**{11}** In this case, the prosecutor did not ask Officer Orum about Defendant's criminal history; he asked Officer Orum to describe Defendant's demeanor just before Defendant was placed in custody. Officer Orum responded, "he was physically visibly upset, he did not want to go back to jail." Defense counsel objected and moved for a mistrial. The court denied the motion, but gave the jury a curative instruction.

**B.      Improprieties in Prosecutor's Closing Argument**

**{12}** While both the prosecution and defense are permitted wide latitude during closing argument, "remarks by the prosecutor must be based upon the evidence or be in response to the defendant's argument." *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254. Where a prosecutor's statements are not based on the evidence or are otherwise improper, "[o]ur ultimate determination of th[e] issue rests on whether the prosecutor's improprieties had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Duffy*, 1998-

NMSC-014, ¶ 47, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110.

**{13}** After reviewing the record, we conclude that the majority of the prosecutor's statements in closing argument were based on the evidence and not otherwise improper. However, the prosecutor's remark referring to Defendant as "Mr. Abuser," was inappropriate and should not have been made. Nevertheless, we do not believe this remark was so persuasive and prejudicial as to deprive Defendant of a fair trial. *See State v. Martinez*, 1983-NMSC-018, ¶ 4, 99 N.M. 353, 658 P.2d 428 (holding that the prosecutor's reference to the defendant as a "chola punk" was inappropriate but did not warrant a new trial). This is especially true because defense counsel was afforded the requested relief–the remark was stricken from the record. *See State v. Trevino*, 1991-NMCA-085, ¶ 20, 113 N.M. 804, 833 P.2d 1170 ("[The d]efendant may not complain on appeal when the specific relief requested was granted."), *aff'd in part on other grounds by* 1993-NMCA-067, 116 N.M. 528, 865 P.2d 1172. We conclude that any prejudice which might have occurred as a result of the comment was adequately cured by the district court.

**II.    Photographic Evidence**

**{14}** Defendant claims that the district court erred in allowing the State to introduce several photographs of Victim's injuries at trial because the photographs, taken four

days after the alleged incident, were unreliable and were more prejudicial than probative. This Court "review[s] the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino,* 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. We perceive no clear abuse in this case.

{15} Photographs can be very helpful to the jury because "[t]hey are often more accurate than any description by words, and give a clearer comprehension of the physical facts than can be obtained from the testimony of witnesses." *State v. Bahney*, 2012-NMCA-039, ¶ 43, 274 P.3d 134 (internal quotation marks and citation omitted). Where photographic evidence is offered to corroborate or explain the testimony of a witness, it is admissible "when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness's personal observation." *State v. Henderson*, 1983-NMCA-094, ¶ 8, 100 N.M. 260, 669 P.2d 736. "Graphic photographs of the injuries suffered by [the] victims of crime are by their nature significantly prejudicial, but that fact alone does not establish that they are impermissibly so." *Bahney*, 2012-NMCA-039, ¶ 43. "In fact, we are unaware of any case that has reversed a conviction due to allegedly inflammatory photographs." *State v. Pettigrew*, 1993-NMCA-095, ¶ 11, 116 N.M. 135, 860 P.2d 777.

**{16}** Here, Victim testified that the photographs, taken four days after the incident, fairly and accurately represented how her injuries appeared at that time, laying a sufficient foundation for their admissibility. The photographs were highly probative because they illustrated Victim's testimony and depicted her injuries and could have aided the jury in determining whether aggravated battery occurred. *See id.* ¶ 10 (holding that a life size photograph of the battered victim which depicted the victim's injuries "could have aided the jury in determining whether aggravated battery occurred by illustrating the doctor's testimony"). Moreover, the photographs primarily depicted bruising and were not sufficiently graphic as to create prejudice that outweighed their probative value. Therefore, we conclude that the district court did not abuse its discretion in admitting the photographs.

**III.    Officer Orum's Testimony**

**{17}** The district court's admission of Officer Orum's testimony will not be overturned absent an abuse of discretion. *See State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted). The discretion of the district court is broad, and such judgment will be

sustained unless manifestly erroneous. *State v. Chouinard*, 1981-NMSC-096, ¶ 7, 96 N.M. 658, 634 P.2d 680.

{18}    The jury was instructed that, in addition to other essential elements not applicable here, it was required to find beyond a reasonable doubt that Defendant "acted in a way that would likely result in death or great bodily harm" to Victim. The jury was also instructed that "great bodily harm" means

> an injury to a person which creates a high probability of death or results in serious disfigurement or results in loss of any member or organ of the body or results in permanent or prolonged impairment of the use of any member or organ of the body.

Great bodily harm was proven at trial through two witnesses: Victim and Officer Orum.

{19}    Officer Orum, who had investigated numerous domestic violence cases (in the double digits), was dispatched to the scene in response to a 911 call. Upon his arrival, Officer Orum saw Victim outside the house crying, her eye was discolored and almost swollen shut, and there was blood on her nose. After the EMTs finished examining Victim and cleaning the blood off her nose, Victim told him what had happened. Officer Orum noted that Victim's injuries–an eye swollen shut and marks on her arms, neck, and back–were consistent with what Victim told him had happened.

{20}    Officer Orum testified he had received training in first aid, CPR, and defensive tactics at the police academy and through continuing education. In his training on self-

9

defense tactics, the area from the neck up is a "no-strike" zone, meaning he was not allowed to strike another trainee in that area because one could crush the windpipe, and if the skull shatters from a blow, pieces of the skull can go into the brain. In either case, death can result, and a police officer must be able to justify using deadly force to strike such a blow. Defense counsel objected that such testimony required medical knowledge, and Officer Orum was not qualified as a medical expert. The objection was overruled. Officer Orum took the photographs of Victim's injuries the night of the incident, and said that the mark on her neck was of concern because it looked like finger marks caused by squeezing the neck with great force. Officer Orum added that his training taught him that if an individual was deprived of oxygen for six minutes, the person could die or be "brain dead" and that in his opinion, the type of injury depicted on her neck could produce great bodily harm. Defense counsel again objected on grounds he was not an expert, and the objection was overruled. Officer Orum then said that Victim could have died if she was deprived of oxygen.

**{21}** Defendant argues that the district court erred in allowing Officer Orum to testify as a medical expert regarding his opinion that Victim was injured in a manner that could cause great bodily harm or death. We conclude that Officer Orum was not offered–or admitted–as an expert witness and that his opinions were admissible as lay opinion testimony under Rule 11-701 NMRA.

{22} As to the injuries themselves, Officer Orum did nothing more that relate to the jury what he saw–an eye swollen shut, bruises on Victim's head and body, and the outline of fingers around Victim's neck.

{23} As to opinions, Officer Orum said: (1) death can result from striking the neck if the windpipe is crushed; (2) death can result if the skull is hit hard enough to send pieces of the skull into the brain; (3) that death or "brain death" can result if a person is deprived of oxygen for six minutes; (4) that it appeared from the marks on Victim's neck that her neck was squeezed with enough force that could have resulted in great bodily harm. Items (1), (2), and (3) are matters within the common knowledge and experience of an average person. See *Garcia v. Borden, Inc.*, 1993-NMCA-047, ¶ 7, 115 N.M. 486, 853 P.2d 737 (stating that while lay opinion testimony is generally confined to matters within the common knowledge and experience of an average person, the lay witness's perception may be given where their opinion might be helpful to the fact finder). Moreover, there was no evidence that Victim's windpipe was crushed, that her skull was hit hard enough to send pieces into her brain, or that she was deprived of oxygen for six minutes.

{24} This leaves item (4), the only opinion which relates to Victim's bodily injury in this case. Officer Orum's opinion was that it appeared from the marks on Victim's neck that her neck was squeezed with enough force that could result in great bodily

11

harm. This opinion was rationally based on his perception of Victim's injury. It was therefore admissible under Rule 11-701 as lay opinion. *See Sanchez v. Wiley*, 1997-NMCA-105, ¶¶ 17-19, 124 N.M. 47, 946 P.2d 650 (stating that the foundation for admission of lay opinion testimony is that the witness has first-hand information which is rationally connected to the opinion formed, and concluding that a seventeen-year-old teenager could express his opinion that the driver of a backhoe was intoxicated, based on his observations of the driver and his experience in seeing other persons under the influence of alcohol); *Garcia*, 1993-NMCA-047, ¶¶ 7, 10 (stating Rule 11-701 permits a lay witness to state an opinion that is rationally based on the witness's perception and helpful to the determination of a fact in issue in the case); *Hansen v. Skate Ranch, Inc.*, 1982-NMCA-026, ¶¶ 22, 24-25, 97 N.M. 486, 641 P.2d 517 (stating that under Rule 11-701, a lay witness can testify to his opinions based on personal perceptions, and the lack of expertise in the area goes to the weight of the evidence, not its admissibility, and concluding that based on his observations, a lay witness could testify to the lack of any safety precautions at a skating rink); *Estrada v. Cuaron*, 1979-NMCA-079, ¶¶ 3-5, 93 N.M. 283, 599 P.2d 1080 (concluding that a sixteen-year-old boy who saw the defendant's car approaching pedestrians about 75 yards south of the point where he struck them, who drove his own car to work, and was experienced in observing the speed of other cars was qualified to express his

opinion that the defendant's car was traveling at a high rate of speed, probably 65 or 70 miles an hour, and it was error to exclude his testimony); *Jesko v. Stauffer Chem. Co.*, 1976-NMCA-117, ¶¶ 6-7, 89 N.M. 786, 558 P.2d 55 (concluding that the owner of corn fields who observed damage on two fields that the defendant admitted was caused by its chemical and who compared that damage to what he observed in a third field, was permitted to express his lay opinion that the damage to the third field was caused by the same chemical).

{25}    The district court did not abuse its discretion in admitting Officer Orum's opinions into evidence. The district court instructed the jury on UJI 14-5050 NMRA, Opinion Testimony rather than the expert testimony instruction contained in UJI 14-118 NMRA. It is well within the realm of common knowledge and experience of an average person that choking a person with sufficient force can, and sometimes does, cause great bodily harm. Such a conclusion does not require testimony from an expert, based on scientific knowledge, to be admissible. Moreover, Victim and Officer Orum both testified that Victim was choked, and the photographic evidence corroborated their testimony.

**CONCLUSION**

{26}    For the foregoing reasons, we affirm Defendant's conviction.

{27}     **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**LINDA M. VANZI, Judge**

14