[No. 3043. Jan. 26, 1927. Rehearing Denied Feb. 14, 1928.]

STATE v. HOUSTON et al.

[263 Pac. 754.]

O. O. Askren, of Santa Fe, for appellants.

J. W. Armstrong, Atty. Gen., and J. N. Bujac, Asst. Atty. Gen., for the State.

## OPINION OF THE COURT

BICKLEY, J. The appellants, J. Houston and John Houston, were convicted of assault with intent to murder D. D. Dodson. The Houstons lived on a farm in Curry county. Dodson was a deputy sheriff of said county. There had been strong language used between Dodson and the elder Houston. There were charges and counter charges between the parties, and it is enough to say that an ill feeling existed between them prior to any physical demonstration. Afterwards Dodson came to the home premises of Houston for the declared purpose of gathering wild plums. Houston claimed that the route taken across his place to the plum thicket was unusual and unnecessary, and that he suspected Dodson of hostile and evil purposes. Houston commanded Dodson to leave his premises upon that occasion. Dodson claimed that the elder Houston was armed, and used strong and bitter language toward him, and Houston claimed that at that time Dodson threatened to "get" him later. Afterwards Dodson and the Houstons met at the school-house, where religious services were in progress on the night of August 6, 1924. Dodson admitted being armed, and explained that he had general instructions from the sheriff to be on the lookout for some law violators. He had no warrant for any of the Houstons, and it is not claimed that Dodson went to the place to arrest any of the Houstons. J. Houston also admitted that he came to the meeting with a pistol, but claimed that it was in his automobile until brought into play under the circumstances hereafter related. There was a coalhouse not far from the meeting house where the defendants and Dodson first met. There is a conflict in the testimony as to whether the Houstons came upon Dodson there or whether Dodson came upon

the Houstons. There were angry words passed between the parties; there being a conflict as to who commenced the wordy warfare. Dodson claimed that one of the defendants drew a pistol, and that he then drew his pistol, and that a fight occurred between them. Dodson claimed to have been struck over the head with a pistol at that time. In this combat Dodson got the worst of it. He was knocked down by one of the Houstons and was severely beaten. In the affray Dodson lost his pistol. The Houstons claimed that Dodson was the aggressor; that they resisted him, and, after subduing him, left the scene of the combat, and that, if they had had murderous intentions, they could have been executed at that time when Dodson was entirely within their power. Very shortly after the occurrences heretofore detailed, Dodson came to the meeting house. There he procured a light, and, in company with W. H. Arp, went back to the coal-house, and found his pistol. Dodson and Arp then came back to the meeting house to a point near where the defendants were. Dodson said that upon seeing the defendants he went toward them, and told them to get their hands up. Nothing was said by Dodson at that time about making an arrest. The witness Arp testified that he thought that was what Dodson was going to do. Dodson was carrying his pistol in his hand at his side at the time he commanded the Houstons to put up their hands. According to Dodson's testimony, J. Houston immediately began to shoot at him, and Dodson returned his fire, shooting twice. On the other hand, the Houstons contended that Dodson fired the first shots, two in number, and then J. Houston commenced to shoot at Dodson, in self-defense. The parties continued to advance upon each other until they met and grappled; Houston pounding Dodson over the head with his six-shooter used as a club. Dodson was again worsted, lost his pistol, and fled the scene. There is no proof that the defendants knew that Dodson dropped his pistol on this occasion. According to some of the testimony, the Houstons followed Dodson, and continued to shoot at him. This was denied by the Houstons. As to whether the Houstons continued to

shoot after Dodson dropped his pistol and was in flight was one of the issues submitted to the jury by instruction.

Both the defendants and Dodson are supported by corroborative testimony as to who fired the first shot. There were twelve witnesses for the state and two-thirds as many for the defendants. The testimony occupies over 300 typewritten pages. We have read it with care, and find that there is much confusion in the minds of the witnesses as to exactly what occurred.

A motion for a new trial was filed urging several alleged errors of the trial court, but, as we find it necessary to reverse the judgment on one ground urged in said motion, it is not necessary to consider the others.

The first point presented by appellants is that the court erred in overruling their motion for a new trial predicated upon newly discovered evidence. The requirements necessary to obtain a new trial upon newly discovered evidence are set forth in State v. Luttrell, 28 N. M. 393, 212 P. 739, as follows:

"(1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be merely impeaching or contradictory to the former evidence."

Some of the newly discovered evidence might by diligence have been discovered prior to the trial, and so is not available in support of the motion. Other alleged newly discovered evidence is not subject to the objection that it could have been discovered by an exercise of due diligence. The motion alleges that O. K. Roberts and John F. Wall, residents of Curry county, immediately prior to the shooting at the Moye Sunrise schoolhouse were in Clovis in said county, and that they overheard the prosecuting witness D. D. Dodson engaged in a conversation, in which the said Dodson stated that the defendant J. Houston and his boy had run him, the said Dodson, out of the plum orchard down at the place of defendants, and had cursed him and abused him, and that

in running him away from said place the said Houston had made a demonstration with a gun; that in the said conversation the said Dodson seemed to be angry and excited during said conversation; that the said Dodson further stated that at said time in said plum orchard the said defendant J. Houston had the advantage of him (Dodson), that he (the said J. Houston) had his boy with him; and that he (the said Dodson) had no one with him except his little boy, and had no chance at the Houstons at the time; and that there were two of the Houstons, and they were armed, and he had no one with him except his little boy; that in said conversation the said Dodson stated, "I will get the old son of a bitch yet; he cannot stay at home always or have his boy all the time." This portion of the motion was supported by the affidavits of the defendants and by the affidavits of the said Roberts and Wall, which affidavits were substantially the same. The court heard evidence on the motion for a new trial, and the affiants Roberts and Wall testified and were cross-examined by the district attorney.

The state offered no testimony in rebuttal and no counter affidavits.

The remarks of the court overruling the motion contained the following:

"I have considered the matters you have urged in the motion, and most of the evidence and affidavits attached to the motion, with the exception of that of Dr. Jones, consists of evidence claimed to be newly discovered. Most of this evidence is cumulative in nature, if not all of it. As I recall the testimony in the trial, substantially the same facts were testified to, or other facts were testified to from which the same conclusions could be drawn. That in itself would constitute a reason why the motion should be overruled on those grounds. I know it is commonly expressed that a motion for new trial is directed to the discretion of the trial court. In that it is part correct, but it is a legal discretion, and not an arbitrary discretion which must be exercised in accordance with established rules of law and procedure."

We agree with the trial court that some of the evidence adduced in support of the motion as newly discovered would be cumulative, but we deem the evidence of Roberts and Wall as not "merely cumulative." It is true that the Houstons had testified that Dodson said in the Hou-

ston pasture when ejected therefrom: "I will get you yet," or words to that effect. But this might be ascribed to the irritation of Dodson brought about by being compelled to leave the Houston pasture. He might have repented of this remark when he cooled off, but what he said in Clovis some time afterwards in the hearing of Roberts and Wall, at a time immediately prior to the shooting, indicates a settled deliberate purpose. We regard the motion as the tender of evidence of an independent, affirmative fact, not covered by any testimony in the case. In addition to this, Dodson denied the statements attributed to him in the Houston pasture, but made no affidavit on the motion for a new trial countering the affidavits of Roberts and Wall, and was not called to the witness stand on the hearing of said motion to contradict said Roberts and Wall, and no explanation is offered of the failure to secure the testimony of Dodson on this point. The Attorney General was content to say in his brief that the newly discovered evidence is cumulative of the evidence at the trial, and tends merely to contradict the evidence for the state.

In 16 C. J. Crim. Law, par. 2729, it is said:

"In its final analysis the matter rests very much in the discretion of the trial court; and, if the evidence not only tends to impeach the state's witnesses, but is also of such affirmative character as would probably produce a more favorable result on a new trial, the motion will be granted, especially where defendant was surprised on the trial, or where the state's evidence was weak and unsatisfactory."

An illustration cited to the foregoing text is found in Leverich v. State, 105 Ind. 277, 4 N. E. 852, as follows (quoting from note in 16 C. J. Crim. Law, § 2729):

"Evidence of threats made by the prosecuting witness, on a trial for assault and battery with intent to murder the prosecuting witness, claimed to have been discovered since the trial, was competent evidence, and not merely impeaching in character, and authorized the granting of a new trial, although such threats were not communicated to defendant."

The court said:

"If the question is as to which party in the encounter is the assailant, then it is admissible to prove by the prior declarations of either that the attack was one he intended to make. * * *

Evidence that the deceased, or the prosecuting witness, attacked the defendant being first introduced, proof of previous threats by him is admissible upon the ground that such threats may tend to illustrate the character of the attack thus made, although never communicated to the defendant."

We recognize the same doctrine here. In State v. Ardoin, 28 N. M. 641, 216 P. 1048, we said:

"In homicide cases, where the killing is sought to be justified on the ground of self-defense, two important questions of fact are presented to the jury for answer: (1) Who was the aggressor? and (2) What were the reasonable apprehensions of the defendant for his life and safety? We can say generally that whatever evidence will assist the jury in answering these questions, or either of them, should be admitted if properly offered. Boyle v. State, 97 Ind. 322. So, if either party to the affray had been making threats against the other, although uncommunicated to the other, that fact would materially aid the jury in determining who was the aggressor."

In State v. Davis, 30 N. M. 395, 234 P. 311, we quoted with approval the following language of Mr. Justice Botts in the Ardoin Case:

"It strikes us that the true guide should be a reasonable discretion, and whenever the specific act, by reason of its character, or its relationship in time, place or circumstance to the other facts in the case, would legitimately and reasonably either affect the defendant's apprehensions, or throw light on the question of aggression, or upon the conduct or motives of the parties at the time of the affray, it should be admitted."

In the case at bar the question as to which party to the encounter was the aggressor was a vital one.

Another rule which bears upon the discretion of the court in considering the motion for a new trial on the ground of newly discovered evidence is the sufficiency of the trial evidence. In 16 C. J. Crim. Law, par. 2726, it is said:

"Where the evidence for the prosecution was barely sufficient to sustain a verdict of guilty, and the newly discovered evidence is material, the court will more readily grant a new trial than where the incriminating evidence would have been sufficient if the evidence newly discovered had been introduced to rebut it at the trial."

And in paragraph 2727 of the same article it is said:

"Where the prosecution's case is weak and the new evidence would strongly tend to create a doubt as to defendant's guilt, a new trial should be granted, although such evidence is cumulative."

And again the phrase "merely cumulative" is considered as follows:

" 'Merely cumulative,' as used in this connection, however, means cumulative evidence the weight of which would probably be insufficient to turn the scales in defendant's favor."

We think the prosecution's case at bar is weak. There was great excitement apparent among the people at the gathering when the shooting took place. Some of them were witnesses on each side at the trial. There is a sharp conflict among those witnesses as to who committed the aggressive, overt act and as to other attendant circumstances. This may be accounted for partly by the darkness of night and partly by the excitement of the occasion.

The trial court, in ruling on the motion for a new trial, said:

"As to the proposition that the verdict is not supported by the evidence and is contrary to law, I have considered this question a good deal. In a case of this, kind, it is my opinion that the proof must be sufficient to raise the offense to murder, had the prosecuting witness died of wounds, and that the charge of manslaughter would not be included within the charge of assault with intent to kill. In this case very likely there is substantial evidence to sustain a conviction of murder in the first or second degrees, had the witness Dodson been killed. I might conceive, as argued by counsel, that the defendants did not intend to kill the witness Dodson, but the court does not pass on the facts in cases of this kind, and I am precluded by the jury on that point. There is conflicting testimony, and the jury said that the defendant did the act complained of with the intent to kill and murder, and the court is precluded from going behind that on the proposition raised by counsel."

The court correctly stated the law to the effect that, if a shot fired by Houston had killed Dodson under such circumstances as would have rendered him guilty of manslaughter merely, he could not be convicted of assault with intent to murder. See State v. Rogers 31 N. M. 485, 247 P. 828.

This was among the questions which doubtless caused the trial court to give the serious consideration to the evidence as mentioned by the court. We have read every word of the record, and similar doubts are created in our minds. Yet our conclusion would have been, as was the

trial court's on the point presented by the motion for a new, trial, "that the verdict was unsupported by the evidence." Yet this consideration, in the light of the principles of law last above quoted, moves us to the conclusion that the trial court should have granted the motion for a new trial on the ground of the newly discovered evidence of Roberts and Wall.

In the case of Territory v. Pettine, 16 N. M. 40, 113 P. 843, the territorial Supreme Court decided that, where there was ample evidence to warrant a conviction, though eliminating the testimony of a witness, the refusal to grant a new trial on the ground of the falsity of the testimony of a witness disclosed by his affidavit in support of of a motion for a new trial was within the court's discretion, and the court on appeal, though having the right to review the discretion of the trial court in refusing to grant the new trial, would not, under the circumstances of that case, disturb the ruling. That decision was reversed by the Circuit Court of Appeals, Eighth Circuit, in 201 F. 489, Judge Sanborn, writing the opinion, in which it was said:

"It is suggested in answer that if this ruling was error it was not prejudicial because the testimony of Campagnoli went only to the defendant's preconceived intention to kill, and the jury by its verdict of murder in the second degree, instead of in the first degree. as charged, found that he had no such intention. But the legal presumption is that error produces prejudice, and it is only when the fact so clearly appears as to be beyond doubt that an error challenged did not prejudice, and could not have prejudiced, the complaining party, that the rule that error without prejudice is no ground for reversal is applicable [citing cases].

"The main issue at the close of the trial of this case was whether the killing of Berardinelli was murder or justifiable homicide. * * *

"It was an established and settled rule of the Supreme Court of the territory of New Mexico that the denial by the trial court of a motion for a new trial based upon facts not. presented at the trial rests in the sound discretion of the trial court, but that an abuse of that discretion entitles its victim to a reversal of the order by the Supreme Court of the territory on appeal or writ of error [citing cases]. In the case at bar that court, in accordance with this rule, considered the question whether or not the denial of the motion in this case was such an abuse, and declined to decide it on the ground that the testimony of Campagnoli could not have affected the verdict because there was ample

evidence to sustain it without that testimony. * * * But that court was without jurisdiction on the sharp conflict of testimony here to determine the guilt or innocence of the defendant, or the sufficiency of a part of the evidence before the jury to sustain the verdict they rendered. The question for it to determine was not whether a part of that evidence would satisfy the minds of its members of the guilt or innocence of the accused, for the jury alone had jurisdiction of that question. The only question of which the Supreme Court of New Mexico had jurisdiction was the question whether or not the defendant had had a fair and impartial trial without error according to law. Under the Constitution of the United States, the defendant had the right to a fair and impartial trial of the issue of his guilt or innocence by a jury of his peers without error of law and according to the course of the common law. He had the right to an acquittal of the charge against him unless the legal evidence satisfied the jury, not the appellate court, of his guilt beyond a reasonable doubt. The evidence on this issue was conflicting with little, if any, preponderance against him, when the false testimony of Campagnoli was thrown into the balance, and he was sent to the penitentiary for 45 years. Was that a fair trial in which this false testimony was thrown into the wavering balance at the close of the trial too late for the defendant to demonstrate its falsity? Is it clear beyond doubt that this testimony did not turn the scales against him or remove from the mind of some juror a reasonable doubt of his guilt? Can it be truthfully said that it was not a gross abuse of its discretion for the trial court to refuse to grant a new trial here and to refuse to exclude this false testimony from the minds of the triers of this fateful issue on which 45 years of the life of the defendant hung?"

Is it clear beyond a reasonable doubt that the testimony of two disinterested witnesses that the prosecuting witness had made, at a time and place when no present circumstance tended to inflame him, threats of violence against the defendants, would not turn the scales in favor of the defendants, and create in the mind of some juror a reasonable doubt of defendants' guilt? We think not.

From all the foregoing it appears that the trial court erred in not granting the motion for a new trial. The judgment below is therefore reversed, and the cause remanded, with directions to set aside the verdict and grant a new trial, and it is so ordered.

PARKER, C. J., and WATSON, J., concur.