2005-NMSC-038

125 P.3d 638

**STATE of New Mexico, Plaintiff–
Respondent,**

v.

**Joe GARCIA, Defendant–Petitioner.**

No. 28,537.

Supreme Court of New Mexico.

Nov. 29, 2005.

John Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Elizabeth Blaisdell, Assistant Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, NM, for Respondent.

## OPINION

CHÁVEZ, Justice.

{1} A jury convicted Joe Garcia ("Defendant") of aggravated battery likely to result in death or great bodily injury, a third degree felony. Defendant filed a motion for a new trial on the grounds of newly-discovered evidence. The newly-discovered evidence consisted of photographs of the victim taken by a police officer shortly after the altercation which was the subject of the trial. Believing that the photographs would have been helpful to a jury, the district court granted Defendant a new trial. On appeal, the Court of Appeals reversed the district court's decision, concluding that the six factors needed in order to grant a new trial under *State v. Volpato*, 102 N.M. 383, 384–85, 696 P.2d 471, 472–73 (1985) had not been met. We granted Defendant's Petition for Certiorari and reverse the Court of Appeals. We remand the case to district court for a new trial because we do not believe the district court abused its discretion in granting the motion for a new trial.

## FACTS AND PROCEDURAL HISTORY

{2} On March 8, 2002, after a heated verbal dispute involving borrowed money, the victim and Defendant got into a physical altercation. At trial, five witnesses gave varying accounts of the events. The victim and his fiancée testified that Defendant had been the first aggressor, and that the victim, who apparently suffers from rheumatoid arthritis and osteoporosis, had been physically incapable of defending himself, much less of throwing punches. They also testified that during the fight Defendant punched the victim in the face, causing him to fall down, and then repeatedly kicked him. According to the victim, Defendant kicked him in the face.

{3} Defendant and his fiancée, who is also the victim's sister, offered a slightly different version of the events. They admitted that Defendant punched the victim, exchanged blows with him on the ground, and then popped up and kicked the victim while he was still on the ground. However, Defendant and his fiancée claimed that the victim had been the first aggressor and had swung his cane at Defendant. They also claimed that the victim threatened to kill Defendant and had reached into the back of his pocket as if to pull out a gun, causing Defendant to hit and kick the victim in self-defense.

{4} The police officer who investigated the fight also testified at trial for the State. He indicated that the victim had been in shock, or at least that he had been staring and had dilated pupils. The left side of the victim's face was swollen, and the officer recalled seeing blood around the victim's mouth and on his left nostril, but no other injuries. The officer also testified about the missing photos at issue in this appeal. He testified that he had photographed the victim's facial injuries on the night of March 8, 2002, with a digital camera but had either misplaced the photo disk or had taken more photographs over them.

{5} On May 6, 2003, Defendant filed a motion for a new trial or, in the alternative, a motion to replace the felony aggravated battery conviction with a conviction for misdemeanor aggravated battery pursuant to the step-down jury instruction given at trial. In his motion, Defendant argued that the pictures—which the State had inadvertently turned over to the Clovis Public Defender along with the discovery material for another

case—did not support the jury's conclusion that his actions on March 8, 2002, would likely produce death or great bodily harm. The district court granted Defendant's motion for a new trial, and the State appealed. The Court of Appeals held that the district court abused its discretion by granting the motion because the newly-discovered evidence would not change the result of the trial since: 1) the photographs depicted what the State had acknowledged and what was reflected in the medical reports, and 2) the issue was whether Defendant's actions were likely to produce great bodily harm and not whether his actions actually did produce great bodily harm. *State v. Garcia*, No. 24,226, p. 3 (N.M.Ct.App. Feb. 17, 2004). We granted Defendant's Petition for Certiorari and now reverse the Court of Appeals.

## JURISDICTION

■ {6} The State cites *State v. Conn*, 115 N.M. 99, 100, 847 P.2d 744, 745 (1993) for the proposition that our review on certiorari in this case is inappropriate, and specifically that "our jurisdiction in certiorari cases does not encompass weighing or reviewing the resolution of factual issues by the Court of Appeals." In *Conn*, the State asked us to review a Court of Appeals decision holding that a district court had abused its discretion in admitting evidence of an assault conviction in a criminal sexual contact with a minor case. The defendant had pled guilty to the assault nine years and eight months before the trial. *Id.* at 101, 847 P.2d 746. There, because we were being asked to examine a question of fact regarding a district court's exercise of discretion on an evidentiary issue, we held that "it is not within the purview of our jurisdiction on certiorari to resolve mere factual conflicts between the district court of this State and the Court of Appeals." *Id.* In this case, however, we are being asked to review a district court's decision to grant a new trial on the basis of newly-discovered evidence. While the facts of the case constituted a part of the district court's consideration in granting a new trial, the district court's decision remained a legal one. *State v. Ashley*, 1997–NMSC–049, ¶ 9, 124 N.M. 1, 946 P.2d 205. *Conn* does not preclude our review of whether the Court of Appeals erred in concluding that the district court

abused its discretion in evaluating the effect of the newly-discovered evidence.

## MOTION FOR A NEW TRIAL

■ {7} The general rule is that we will not disturb a trial court's exercise of discretion in denying or granting a motion for a new trial unless there is a manifest abuse of discretion. *State v. Romero*, 42 N.M. 364, 370, 78 P.2d 1112, 1116 (1938). Because "the function of passing upon motions for new trial on newly discovered evidence belongs naturally and peculiarly, although not exclusively, to the trial court," *id.*, "[t]he discretion of a trial court is not to be lightly interfered with as to the granting of a motion for new trial." *State v. Fuentes*, 67 N.M. 31, 33, 351 P.2d 209, 210 (1960).

■ {8} A motion for a new trial on grounds of newly-discovered evidence will not be granted unless the newly-discovered evidence fulfills all of the following requirements:

1) it will probably change the result if a new trial is granted; 2) it must have been discovered since the trial; 3) it could not have been discovered before the trial by the exercise of due diligence; 4) it must be material; 5) it must not be merely cumulative; and 6) it must not be merely impeaching or contradictory.

*Volpato*, 102 N.M. at 384–85, 696 P.2d at 472–73. The State does not contest that the color photographs were discovered after trial, that they could not have been discovered before trial by the exercise of due diligence, or that they are material. However, the State argues that the color photographs of the victim's face would not change the result if a new trial were granted, and that the photographs are merely cumulative, or impeaching and contradictory. We disagree and we answer each of these arguments in turn.

## WE DEFER TO THE DISTRICT COURT JUDGE'S FINDING THAT THE PHOTOGRAPHS WOULD PROBABLY CHANGE THE RESULT IF A NEW TRIAL WERE GRANTED

■ {9} "The probability of the new evidence changing a verdict is a question

addressed to the sound discretion of the trial court." *State v. Desnoyers*, 2002–NMSC–031, ¶ 26, 132 N.M. 756, 55 P.3d 968 (citations and quotations omitted), *abrogated on other grounds by State v. Forbes*, 2005–NMSC–027, ¶ 6, 138 N.M. 264, 119 P.3d 144. In ordering a new trial, the district court made the following written findings:

(1) The defendant did not have photographs that would have been helpful to the jury until after the trial; (2) The lack of those photos were not objected to at trial, nor was a mistrial requested because of the belief that the photographs had been lost; (3) The photographs were in the custody of defense counsel the entire time, having been mislabeled by the police department as another case; (4) The photographs show only minor injuries to the victim; and (5) Defendant had a copy of all medical reports from the victim at the time of trial.

The State argues that the statement "defendant did not have photographs that would have been helpful to the jury until after the trial" does not rise to a finding that the photographs would probably change the result if a new trial were granted. After all, according to the State, the prosecutor's argument had not been that Defendant's actions actually caused great bodily harm, but that his actions were *likely* to cause great bodily harm. However, before announcing his decision to grant the new trial, the district court judge stated:

Whether the pictures were available or not, it's arguable that that description of that act would meet the elements of the aggravated battery charge, acting in a way that would likely result in death or great bodily harm, whether it happened or not. However, the pictures, it would have been helpful for the jury to have seen these pictures. There's no doubt about that … I think the pictures are significantly important, that they should have been presented to the jury. I'm not going to determine as a matter of law that Mr. Garcia be convicted of the misdemeanor, I'm going to order that there be a new trial.

When asked by the State to make specific findings after granting the motion for a new trial, the judge stated:

The reason for this is that Victor Herrera testified that he was kicked in the face and the photographs go to that issue as to whether or not he was kicked in the face. And so the jury should have had that evidence available to consider when they determined whether or not he was kicked in the face because that, I think, is the action that distinguishes this from simple battery, being kicked in the head. So that's the reason for my ruling.

{10} In *State v. Melendez*, 97 N.M. 740, 643 P.2d 609 (Ct.App.1981), *rev'd on other grounds by* 97 N.M. 738, 643 P.2d 607 (1982), the Court of Appeals found that the trial court should have granted the defendant's motion for a new trial on the grounds of newly-discovered evidence. There, the defendant was convicted of the voluntary manslaughter of a rival gang member, and after trial a bullet was found lodged under the hood of the defendant's car. Evidence of the bullet's angle of entry and rifling characteristics supported the defendant's self-defense theory that the bullet had been fired by a member of the victim's gang and bore on the truthfulness of two important State witnesses. *Melendez*, 97 N.M. at 743, 643 P.2d at 612. It was clear in that case from the jury verdict "that defendant's claimed self-defense was not believed; else the defendant would have been acquitted." *Id.* Because with the additional evidence "a jury could well have reached a different result on defendant's guilt," the Court of Appeals held that a new trial should have been allowed. *Id.*

{11} Here, the victim was the only witness who testified that Defendant kicked him in the face. The victim's fiancée, Defendant, and Defendant's fiancée all testified that Defendant kicked the victim when the victim was on the ground, but none pinpointed where the kick or kicks landed. Furthermore, the State and defense witnesses described the victim's injuries differently. The victim testified that he had bruises on both sides of his face, broken dentures, scratches on his neck, and that his face "was beaten pretty bad." The victim's fiancée testified

that Defendant had a big bruise across his chest, that the side of his face was bruised, that he had knots on his head, that his lips were "all busted," and that his nose and mouth were bleeding. Defendant and his fiancée, on the other hand, denied seeing any injuries on the victim's face besides mucous and denied the victim's claim that he had been wearing his dentures. As in *Melendez*, it is clear that the jury did not believe Defendant's theory of the case, or else it would have acquitted him. However, the color photographs showing minor injuries to the victim, which might have been obtained in the scuffle instead of from a kick to the head, support Defendant's claim that his actions were not likely to result in death or great bodily harm and bear on the credibility of the testimony of the victim and his fiancée. With the additional evidence a jury could well have reached a different result. *See Melendez*, 97 N.M. at 743, 643 P.2d at 612.

**THE NEWLY–DISCOVERED EVIDENCE WAS NOT MERELY CUMULATIVE**

■ {12} The State argues that the photographs are cumulative because they do not contribute anything new or different concerning whether the victim was kicked in the face. Specifically, the State argues that the district court's findings four and five (that the photographs show only minor injuries and that Defendant had copies of the victim's medical reports also detailing minor injuries), coupled with the prosecutor's argument that Defendant's actions were *likely* to cause great bodily harm and not that they actually did, demonstrate that the color photographs are cumulative. We addressed the "cumulative" prong of what is now known as the *Volpato* test in the case of *State v. Houston*, 33 N.M. 259, 263 P. 754 (1927). There, we explained that the phrase *merely cumulative* "means cumulative evidence the weight of which would probably be insufficient to turn the scales in defendant's favor." *Id.* at 266, 263 P. at 757 (quotations removed).

{13} In *State v. Pettigrew*, 116 N.M. 135, 860 P.2d 777 (Ct.App.1993), the Court of Appeals was asked to review the relevancy and prejudice of a photograph of a battery victim that had been admitted at trial.

There, the Court stated: "Photographs are the pictured expressions of data observed by a witness. They are often more accurate than any description by words, and give a clearer comprehension of the physical facts than can be obtained from the testimony of witnesses." *Id.* at 139, 860 P.2d at 781 (quoting *State v. Carlton*, 83 N.M. 644, 648, 495 P.2d 1091, 1095 (Ct.App.1972)). The Court of Appeals in *Pettigrew* also found the photograph to be "relevant because it depicts the extent of Victim's injuries and because it makes more probable than not the potential of great bodily harm, which is an element of aggravated battery." *Id.*

{14} In this case, while it is true that Defendant had access to medical reports describing bruising and minor injuries, the prosecution was able to effectively capitalize on the lost photographs. When asked on cross-examination whether the medical reports documented the victim's claim that he had bruising on both sides of his face, the victim stated, "no, but the pictures do." Furthermore, even though the prosecutor argued in closing that it was not a question of whether Defendant caused great bodily harm but only whether his actions were likely to do so, the prosecutor still emphasized the victim's injuries. For example, at the beginning of his closing argument, the prosecutor stated:

Let's start with Officer Lutz. I know it's kinda going backwards but I think it's really key some of what he told you. Did he mess up by losing the pictures? Yeah. But do any of you doubt that he saw what he saw? He was pretty straight forward: "I got there and victim's face was all swollen, kinda glassy-eyed, it was bleeding." That's what he saw. He's got no interest or bias in this thing. He got called out. Here's what I saw. Two other witnesses say there were injuries, Mr. Herrera and Ms. Evans. Two witnesses don't. Let's see, who are they? Oh, that's right, the defendant and his fiancée. Nope, no injuries, even though the defendant is happy to tell you, "I got the better of it. He didn't even have a chance to, and yeah he was getting some blows in while we were down but I definitely." Well, there was some

mucous, that's what the defendant told you. But no blood.

Later, the prosecutor said:

And remember, it's not that this actually happened, it's that his actions of kicking someone in the face while they are on the ground defenseless could have resulted in that, likely resulted in that kind of offense, kind of damage. *I think it's very likely if you are kicking anywhere from 3 to five or more times someone in the face that those are the kind of injuries that you get. You get that broken neck, you get that smashed eye. In this case, you get lost teeth.*

(Emphasis added.) While there is nothing inherently wrong with a prosecutor claiming that injuries are not necessary to convict while at the same time emphasizing the injuries that a victim suffered, we cannot say that in this case the pictures would "probably be insufficient to turn the scales in defendant's favor." *Houston,* 33 N.M. at 266, 263 P. at 757 (quotations removed). Therefore, we find that the photographs, or "pictured expressions," of the victim's face were not merely cumulative. *See Pettigrew,* 116 N.M. at 139, 860 P.2d at 781.

## THE NEWLY–DISCOVERED EVIDENCE WAS NOT MERELY IMPEACHING OR CONTRADICTORY

■ {15} The State argues that the color photographs provide only impeaching evidence to the testimony of the victim and his fiancée. In *Volpato,* the trial court denied the defendant's motion for a new trial on the basis that the newly-discovered evidence was merely contradictory of other evidence and the bulk of the testimony at trial. 102 N.M. at 385, 696 P.2d at 473. The newly-discovered evidence in *Volpato* was the testimony of a woman who had previously been afraid to testify as a witness. Her testimony corroborated the defendant's account that two men had entered his pharmacy and murdered his wife. She placed two men outside the defendant's pharmacy on the night in question and remembered hearing a series of gunshots in the same sequence as described by the defendant. *Id.* Her testimony also indicated how one of the men could have obtained the defendant's gun prior to the murder. *Id.* We concluded that the new evidence in *Volpato*

was corroborative and was not merely contradictory. To support this conclusion, we cited *State v. Fuentes,* 67 N.M. at 32, 351 P.2d at 210, for the proposition that "[i]t is not a question of which story the judge himself believed to be true, but, rather, whether the defendant should have the right to have all of the testimony submitted to a jury in order that the jury might then determine his guilt or innocence." *Id.*

{16} In this case, the newly-discovered evidence is not testimony, as in *Fuentes.* Nevertheless, we believe Defendant should have the right to have the color photographs presented at a new trial. While the color photographs might impeach or contradict the testimony of the victim, his fiancée, and the police officer, they also corroborate Defendant's claim that his actions were not likely to result in death or great bodily harm. Therefore, the color photographs are not merely impeaching or contradictory to evidence presented at Defendant's trial.

## CONCLUSION

{17} We conclude that the Court of Appeals erred in reversing the district court's order granting Defendant a new trial. The Court of Appeals gave insufficient deference to the district court's determination that the newly-discovered evidence would probably change the result in a new trial. The district court was entitled to view that evidence as corroborative, rather than merely cumulative, impeaching or contradictory. While in the future district court judges might make findings more specifically tailored to the six *Volpato* requirements, the sum of the district court judge's findings justify the decision to grant a new trial. Therefore, we reverse the decision of the Court of Appeals and remand this case to the district court for a new trial.

{18} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and PETRA JIMENEZ MAES, Justices.