This decision was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

    Plaintiff-Appellee,

v.                               **NO. 31,607**

**PHILLIP JAMES BUSEY**,

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Jacqueline Cooper, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**BOSSON, Justice.**

Following a jury trial, Defendant Phillip Busey was convicted of one count of first-degree murder, NMSA 1978, § 30-2-1(A) (1994), two counts of criminal sexual penetration resulting in great bodily harm, NMSA 1978, § 30-9-11(D) (2009), one count of kidnapping, NMSA 1978, § 30-4-1 (2003), one count of aggravated burglary, NMSA 1978, § 30-16-4 (1963), and one count of armed robbery, NMSA 1978, § 30-16-2 (1973).

Defendant appeals his convictions on the following grounds: (1) the district court violated the parties' stipulation when admitting evidence that sperm was present on the victim's body; (2) the district court abused its discretion in denying Defendant's for-cause challenges of prospective jurors; (3) the district court erred in refusing to grant a mistrial when a prospective juror announced that he knew Defendant from prison; (4) the district court erred in denying Defendant's theory-of-the-case jury instruction; (5) the district court violated Defendant's right to a fair trial by permitting the handcuffing of Defendant before the jury had completed deliberating; (6) Defendant's multiple convictions constitute double jeopardy; and (7) cumulative error. We review Defendant's appeal pursuant to Article VI, Section 2 of the New Mexico Constitution and

Rule 12-102(A)(1) NMRA. *See State v. Trujillo*, 2002-NMSC-005, ¶ 8, 131 N.M. 709, 42 P.3d 814 ("Our mandatory appellate jurisdiction is constitutional and is limited to appeals from a judgment of the district court imposing a sentence of death or life imprisonment." (internal quotation marks and citation omitted)). We affirm.

**BACKGROUND**

On January 19, 2005, police were dispatched to an Albuquerque residence to investigate a report of screaming. Upon arrival, the officers discovered blood outside the home and an unconscious woman, Kathryn Hauser ("Victim"), in the doorway. Victim was unclothed, surrounded by blood, breathing unnaturally, and the back of her head was "mushed up." Victim was rushed to the hospital, where she died. The medical investigator determined that blunt force trauma to the head was the cause of death, and that Victim had been sexually assaulted.

Defendant was arrested after a database search in which his DNA matched that found on Victim's body. Later tests also revealed Victim's DNA on Defendant's pants. A jury convicted Defendant of one count of willful, deliberate first-degree murder and five counts of first-degree felony murder under theories of criminal sexual penetration (vaginal), criminal sexual penetration

(anal), kidnapping, aggravated burglary, and armed robbery. Defendant was also convicted of the predicate felonies of criminal sexual penetration (vaginal), criminal sexual penetration (anal), kidnaping, aggravated burglary, and armed robbery.

**THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN ADMITTING EVIDENCE THAT SPERM WAS PRESENT ON THE VICTIM'S BODY**

Before trial, Defendant and the State disputed the admissibility of DNA samples. Defendant claimed that the "composite profiling method" used to identify certain DNA samples was not reliable. The district court had the same concerns and ordered the evidence, dependant upon the composite profiling method, be suppressed. A few days later both parties signed a stipulation, in accordance with the district court's order, as to the admissibility of evidence, which reads in part:

> Pursuant to the Court's Memorandum Opinion entered on July 17, 2008 excluding "all evidence associated with expert testimony regarding the State's expert analysis using the "composite profiling method...", the parties also stipulate that evidentiary items FT-Q3 (D1); Q1 (D1); Q55-1 (D2); and, 54-2 (D2) are properly excluded from evidence at trial.

The four "evidentiary items" listed in the stipulation as "properly excluded from evidence" refer to the Victim's anal and vaginal swabs, along with two swabs

4

taken from Defendant's pants.

At trial, the State sought to introduce evidence that sperm was present on the anal and vaginal swabs taken from Victim without identifying the source of that sperm. Relying on the stipulation, Defendant objected. After hearing argument from the parties, the district court permitted the State to introduce evidence of sperm, although the court barred the State from identifying Defendant as the source, as previously stipulated, due to the unreliability of the "composite profil[ing] method" of DNA analysis. The presence of sperm, even unidentified sperm, in the swabs from Victim's body became important, because at trial Defendant argued to the jury that Victim's estranged husband had killed her and not Defendant. Victim's estranged husband, however, had previously had a vasectomy and was no longer capable of producing semen containing sperm. Thus, any evidence of sperm in Victim's body would undermine Defendant's theory of shifting blame to the estranged husband.

On appeal, Defendant argues that the stipulation precluded the State from eliciting any evidence relating to the sperm, even if such evidence did not identify Defendant as the source. The State disagrees, arguing that the stipulation precluded only the identification of Defendant's DNA in the sperm, not the mere

5

presence of sperm in Victim's body. Defendant asserts that the district court made no such distinction in its order, which excluded "all evidence associated with expert testimony regarding the State's expert analysis using the 'composite profiling method.'"

The standard of review for the admission of evidence is an abuse of discretion. An abuse of discretion "occurs when the court's ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Sena*, 2008-NMSC-053, ¶ 12, 144 N.M. 821, 192 P.3d 1198 (internal quotation marks and citation omitted). This Court stated in *In re Quantius' Will* that "stipulations should receive a fair and liberal construction, in harmony with the apparent intention of the parties and the spirit of justice, and in the furtherance of fair trials upon the merits, rather than a narrow and technical one calculated to defeat the purposes of their execution." 58 N.M. 807, 821, 277 P.2d 306, 315 (1954) (internal quotation marks and citations omitted).

Despite the seemingly broad language in the stipulation, the district court, as the author of the suppression order, reasonably interpreted the scope of its ruling and the stipulation to the effect that it was intended to exclude DNA evidence subject to the composite method and no more. Defendant confirmed as

6

much when the parties debated the issue at trial. Because the admitted evidence did not identify Defendant as the source of the sperm, we do not find that the district court abused its discretion.

**THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING DEFENDANT'S CHALLENGES OF PROSPECTIVE JURORS**

During jury selection, Defendant requested that three prospective jurors be excused for cause. The district court denied Defendant's request. Defendant then excised his peremptory strikes with respect to those jurors. Defendant argues that the district court erred in denying his request.

The standard of review for juror challenges is an abuse of discretion. *State v. Clark*, 1999-NMSC-035, ¶ 5, 128 N.M. 119, 990 P.2d 793. As previously noted, Defendant exercised peremptory challenges with respect to all three prospective jurors. Defendant proceeded to trial without exhausting his available peremptory challenges and made no showing on appeal that the denial of his for-cause challenges had any measurable effect on the composition of the jury that sat in judgment of him. *See State v. Smith*, 92 N.M. 533, 540-41, 591 P.2d 664, 671-72 (1979). Accordingly, Defendant has failed to demonstrate any prejudice from the district court's action.

**THE DISTRICT COURT DID NOT ERR IN DENYING DEFENDANT'S**

**MOTION FOR MISTRIAL**

While on a lunch break during voir dire, a prospective juror stated to other prospective jurors that he recognized Defendant as a former prisoner. The prospective juror had not acknowledged knowing Defendant when the court had previously questioned him during voir dire. When Defendant became aware of these comments, he moved for a mistrial because the court had previously ruled that Defendant's criminal record would not be admitted at trial. The court dismissed the prospective juror who had commented on Defendant's prison term, but denied the motion for mistrial.

The court took considerable precautionary measures. The court brought the remaining prospective jurors back into court. Then, without revealing what the dismissed prospective juror had actually said, the court asked each remaining panel member if they had heard any comments made by the dismissed prospective juror. The court identified two prospective jurors who had overheard the comments, and the court proceeded to question these individuals outside the presence of the remaining jury panel. These two prospective jurors were later dismissed. The court brought the jury panel back into court and again asked if anyone had heard any comments. Finally, the court instructed the jury panel that

if anyone were to later remember overhearing any comments, they should immediately inform the court. On appeal Defendant now claims that the jury panel was prejudiced, and that a new panel should have been selected.

The standard of review for denying a motion for mistrial is an abuse of discretion. *See State v. Fry*, 2006-NMSC-001, ¶ 52, 138 N.M. 700, 126 P.3d 516. We will not reverse the lower court without a manifest error in the exercise of its discretion. *See State v. Garcia*, 2005-NMSC-038, ¶ 7, 138 N.M. 659, 125 P.3d 638.

Based on the record before us, it appears that the remaining members of Defendant's jury were not exposed to the prejudicial comments made by one prospective juror. By removing the offending prospective juror and two other potentially contaminated prospective jurors, the court took appropriate action under the circumstances. The district court did not abuse its discretion in denying Defendant's motion for a mistrial.

**DEFENDANT'S NON-UNIFORM JURY INSTRUCTION WAS PROPERLY REJECTED**

During trial, Defendant made reference to his understanding that at one point in time Victim's estranged husband had been a potential suspect in Victim's murder. Defendant also called witnesses to testify that the estranged husband was

violent and possessed a temper. During closing argument, Defendant argued that Victim's estranged husband had both motive and an opportunity to commit the charged crimes.

At the close of the evidence, Defendant offered a non-uniform jury instruction based on his theory that someone other than Defendant had committed the charged crimes. Defendant's proffered instruction read as follows:

> You have heard evidence that a person other than the defendant committed the offenses with which the defendant is charged. The defendant is not required to prove the other person's guilt. It is the prosecution that has the burden of proving the defendant guilty beyond a reasonable doubt. Evidence that another person committed the charged offenses may by itself raise a reasonable doubt as to the defendant's guilt. However, its weight and significance, if any, are matters for your determination. If after considering all of the evidence, including any evidence that another person committed the offenses, you have a reasonable doubt that the defendant committed the offenses, you must find the defendant not guilty.

The district court denied Defendant's requested instruction and instead provided the jury with standard instructions culled from New Mexico's Uniform Jury Instructions for Criminal Cases. Defendant now argues that the exclusion of his non-uniform instruction denied him a fair trial.

The district court's rejection of a jury instruction tendered by a criminal defendant is reviewed de novo. *See State v. Ellis*, 2008-NMSC-032, ¶ 14, 144

N.M. 253, 186 P.3d 245. We have previously stated that "'published uniform jury instructions must be used unless under the facts or circumstances of the particular case they are erroneous or otherwise improper, and the district court states its reasons for refusing to use them.'" *Benavidez v. City of Gallup*, 2007-NMSC-026, ¶ 19, 141 N.M. 808, 161 P.3d 853 (quoting *First Nat'l Bank in Albuquerque v. Sanchez*, 112 N.M. 317, 322, 815 P.2d 613, 618 (1991)).

After reviewing the record at trial, we believe that the circumstances of Defendant's case did not justify a departure from our uniform jury instructions. After rejecting Defendant's non-uniform instruction, the district court provided the jury with UJI 14-5060 NMRA, entitled "**Presumption of innocence; reasonable doubt; burden of proof**." That instruction reads as follows,

> The law presumes the defendant to be innocent unless and until you are satisfied beyond a reasonable doubt of his guilt.
> The burden is always on the state to prove guilt beyond a reasonable doubt. It is not required that the state prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense -- the kind of doubt that would make a reasonable person hesitate to act in the graver and more important affairs of life.

*Id.*

We note that Defendant's rejected instruction largely follows the legal standard set forth in UJI 14-5060, particularly the presumption of innocence and

the burden of proof on the state in a criminal case. Furthermore, Defendant does not argue that UJI 14-5060's rendition of the law is somehow erroneous or incomplete. Any substantive difference between Defendant's non-uniform instruction and UJI 14-5060 derives from Defendant's instruction asking the district court to vouch for the existence of exculpatory evidence: "You have heard evidence that a person other than the defendant committed the offenses with which defendant is charged." That supposed "evidence" is that a third party, most likely Victim's estranged husband, committed the charged crimes. Surely, Defendant had a theory to that effect, but was it based upon "evidence" admitted at trial?

While Defendant alluded to suspicions that Victim's estranged husband might have killed her, the record shows that Defendant did not offer any *evidence* to support his suspicions, only unsubstantiated speculation. Defendant was free to argue to the jury, as he did, that someone else may have committed the crimes and that there was reasonable doubt as to Defendant's guilt. Defendant was not entitled, however, to a redundant and argumentative jury instruction that was imbued with judicial authority. Defendant was not entitled to have the court vouch for his theory, or if evidence of that theory existed, where none was

apparent. Accordingly, the district court correctly rejected Defendant's tendered jury instruction in favor of our uniform instructions.

**HANDCUFFING DEFENDANT DID NOT WARRANT A MISTRIAL**

While the verdict was read, Defendant was placed in restraints. Specifically, a security officer handcuffed Defendant after the jury foreperson read the first verdict, finding him guilty of felony murder, but before the rest of the verdict was read. Defendant's counsel immediately brought the officer's actions to the attention of the court. In response, the court ordered the officer to step back. However, the court did not ask the officer to remove the handcuffs. The foreperson of the jury then finished reading the rest of the verdict which included guilty verdicts for the remaining four felony-murder charges. After the foreperson finished reading the felony-murder verdicts, it was discovered that the jury had not completed the verdict forms as to Count 1 (Willful and Deliberate Murder), Count 2 and Count 3 (Criminal Sexual Penetration), Count 4 (Kidnapping), Count 5 (Aggravated Burglary), and Count 6 (Armed robbery).

Defendant moved for a mistrial based upon his objection to the handcuffing because it created "an atmosphere of unfairness and extreme prejudice." Defendant argued that the handcuffing would "affect the rest of [the

jury's] deliberations, and . . . the polling of the jury." The district court denied the motion for a mistrial. The court then ordered the jury back to the jury room to complete the verdict forms.

Once the jury left the courtroom, the district court ordered the handcuffs removed. The jury returned with the verdict forms completed and read the remaining verdicts. These verdicts included another guilty verdict as to count 1 (Willful and Deliberate Murder), and guilty verdicts as Count 2 and Count 3 (Criminal Sexual Penetration), Count 4 (Kidnapping), Count 5 (Aggravated Burglary), and Count 6 (Armed Robbery). Felony murder, the verdict announced at the first reading, had been listed as an alternative to willful and deliberate murder. The State brought to the court's attention that the two special verdict forms for kidnapping were not signed. The jury was sent back a second time to complete the kidnapping special verdict forms. The jury returned with a "yes" verdict as to the kidnapping special verdict forms. The jury was then polled as to each verdict. Each jury member affirmed his or her support for the verdicts.

Defendant argues that the handcuffing was prejudicial because it undermined his presumption of innocence, thereby warranting a mistrial. The standard of review for denying a motion for mistrial is abuse of discretion. *See*

14

*Fry*, 2006-NMSC-001, ¶ 52.

With very few exceptions, the use of visible restraint devices is not allowed in front of the jury because the use of such restraint devices undermines the accused's presumption of innocence. *See State v. Johnson*, 2010-NMSC-016, ¶ 26, 148 N.M. 50, 229 P.3d 523. The underlying reason for prohibiting the use of visible restraint devices is to avoid the possibility of jury bias. *Id.* In the exceptional case, visible restraint devices may sometimes be appropriate in the interest of security and preventing escape. *Id.*

While the timing of the handcuffing in this case was admittedly unusual, it could not have jeopardized Defendant's presumption of innocence. Defendant had already lost his presumption of innocence before the handcuffing even occurred, when the jury first convicted him of first-degree felony murder. That verdict was read aloud, and only then did the officers put Defendant in restraints. Once convicted of first-degree felony murder, Defendant was found guilty of every element of that crime. *See State v. Frazier*, 2007-NMSC-032, ¶¶ 25-26, 142 N.M. 120, 164 P.3d 1. The jury, therefore, could not possibly have presumed Defendant innocent of the predicate felonies—criminal sexual penetration, kidnapping, aggravated burglary, and armed robbery—while at the

15

same time convicting him of felony murder based on those same underlying offenses. Accordingly, the handcuffing caused Defendant no prejudice given the particular context of this case, and the court did not abuse its discretion in denying Defendant's motion for mistrial.

In fact, the district court handled the situation commendably under the circumstances. As soon as the court became aware of the handcuffing, it instructed the officers to step back. By not immediately ordering the handcuffs removed, the court avoided drawing more attention to the situation. Likewise, the court waited until the jury was out of the courtroom before ordering the handcuffs removed. Perhaps a more suitable course would have been to send the jury out of the courtroom immediately before allowing the reading to continue, but under the circumstances the court was able to minimize the possibility of prejudice. We also emphasize that within the courtroom it is the trial judge, and not law enforcement, who has the final say regarding the use of restraint devices, including handcuffs.

**DEFENDANT'S CONVICTIONS DO NOT VIOLATE DOUBLE JEOPARDY**

The jury in this case returned guilty verdicts for one count of willful and

deliberate first-degree murder, five counts of first-degree felony murder, and every predicate felony with which Defendant was charged. To avoid double jeopardy problems, the district court vacated all five felony-murder convictions and imposed a sentence on the remaining convictions of willful and deliberate first-degree murder, two counts of criminal sexual penetration (vaginal and anal), kidnapping, aggravated burglary, and armed robbery. Defendant now argues that his convictions violate double-jeopardy principles.

Defendant's argument runs contrary to New Mexico's double-jeopardy jurisprudence, particularly our holding in *State v. Saiz,* 2008-NMSC-048, ¶¶ 24-35, 144 N.M. 663, 191 P.3d 521, *abrogated by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783. In *Saiz*, we permitted the district court to vacate a conviction for felony murder in lieu of a conviction on a single count of willful and deliberate first-degree murder, along with the predicate felony of kidnapping. *Id.* As in *Saiz*, the district court here properly vacated all five of Defendant's convictions for felony murder and imposed conviction on Defendant for the one count of first-degree murder, based on a willful and deliberate theory, along with the five predicate felonies. Like *Saiz*, no double-jeopardy violation occurred on these facts.

17

**CUMULATIVE ERROR**

Because we reject Defendant's arguments, finding no error, the cumulative error doctrine does not apply. *See State v. Salas*, 2010-NMSC-028, ¶ 40, 148 N.M. 313, 236 P.3d 32.

**CONCLUSION**

For the reasons stated herein, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**